IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>**ERIC KARNEZIS**, **FREDRICO WILLIAMS**, **LYNISHA WELLS**, and **NIKKIA BENNETT**,<br><br>Defendants. | Case No. 3:23-cr-00067-IM<br><br>**OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO SEVER** |

Meredith D.M. Bateman, Robert S. Trisotto & Julia E. Jarrett, Assistant United States Attorneys, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for the United States of America.

Ernest Warren, Jr., Warren & Sugarman, 838 SW 1st Ave, Suite 200, Portland, OR 97204. Attorney for Defendant Fredrico Williams.

Michael R. Levine, Levine & McHenry LLC, 1050 SW Sixth Avenue, Suite 1414, Portland, OR 97204. Attorney for Defendant Lynisha Wells.

Janet Lee Hoffman and Justin T. Rusk, Hoffman Law LLC, 1000 SW Broadway, Suite 1500, Portland, OR 97205. Attorneys for Defendant Nikkia Bennett.

**IMMERGUT, District Judge.**

      A grand jury indicted Defendants Eric Karnezis, Fredrico Williams, Lynisha Wells, and

Nikkia Bennett on charges of wire fraud, 18 U.S.C. § 1343, conspiracy to commit wire fraud, 18

PAGE 1 – OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO SEVER

U.S.C. § 1349, and conspiracy to commit money laundering, 18 U.S.C. § 1956(h), for their involvement in the submission of fraudulent loan applications through the Paycheck Protection Program ("PPP"). Redacted Superseding Indictment ("Indictment"), ECF 31 ¶¶ 1–2, 47–227.

Defendants Williams, Wells, and Bennett now move to sever their trials from one another, arguing that a joint trial would (1) require the presentation of mutually antagonistic defenses, (2) violate the Confrontation Clause, (3) prevent the presentation of exculpatory evidence, and (4) cause juror confusion. Williams Mem. in Support of Motion to Sever ("Williams Mem."), ECF 111 at 4–5; Bennett Motion to Sever ("Bennet Mtn."), ECF 115 at 14–26; Wells Motion to Sever ("Wells Mtn."), ECF 119 at 3–8. Defendants do not show that "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). This Court therefore DENIES Defendants' motions to sever.

## BACKGROUND

In August 2024, a grand jury charged Defendants with one count of conspiracy to commit wire fraud, 18 U.S.C. § 1349, twenty-one counts of wire fraud, 18 U.S. § 1343, and one count of conspiracy to commit money laundering, 18 U.S.C. § 1956(h). Indictment, ECF 31 ¶¶ 47–227.

The grand jury found probable cause that between January 2021 and March 2022, Defendant Karnezis and his coconspirators defrauded the Small Business Administration out of millions of dollars by submitting fraudulent PPP loan applications. *Id.* ¶ 1. Karnezis conspired with "recruiters," including Defendant Williams, to gather false business information from "customers," such as Defendants Wells and Bennett, and to submit PPP applications using fabricated documents on behalf of the customers. *Id.* ¶¶ 2, 4. Customers paid recruiters and Karnezis for helping them obtain fraudulent PPP loan proceeds. *Id.* ¶ 5. The PPP loan applications submitted on behalf of Defendants sought to obtain a total of $3,394,085.48. *Id.* ¶ 7.

PAGE 2 – OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO SEVER

These applications constituted a small fraction of the at least 1,300 PPP loan applications that Karnezis submitted, which altogether attempted to obtain at least $178,000,000. *Id.* ¶ 6.

In March 2025, Karnezis pled guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. Plea Petition and Order Entering Plea as to Defendant Eric Karnezis, ECF 86. In August and September 2025, the remaining three defendants filed motions to sever their joint trial. Williams Motion to Sever ("Williams Mtn."), ECF 110; Bennet Mtn., ECF 115; Wells Mtn., ECF 119. In September 2025, the government filed an omnibus response to Defendants' motions to sever, and Bennett and Wells filed reply briefs. Gov't Resp., ECF 123; Bennett Reply, ECF 129; Wells Reply, ECF 135. On December 9, 2025, this Court held a hearing on Defendants' motions to sever and took the motions under advisement after the hearing. ECF 144.

## STANDARDS

It is "well-established" that in federal criminal prosecutions, "there is a preference for joint trials where defendants have been jointly indicted." *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008). And when codefendants are charged with conspiracy, a joint trial is "particularly appropriate." *United States v. Jenkins*, 633 F.3d 788, 807 (9th Cir. 2011). So strong is this presumption that "[t]he burden is on the defendant to show 'clear,' 'manifest,' or 'undue' prejudice from a joint trial." *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018) (quoting *United States v. Polizzi*, 801 F.2d 1543, 1553–54 (9th Cir. 1986)). A district court should grant a motion to sever "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (quoting *Zafiro*, 506 U.S. at 539).

**DISCUSSION**

Defendants pursue several arguments for why this Court should exercise its discretion to sever their trial, but they do not demonstrate "a serious risk that a joint trial would compromise a specific trial right of one of the defendants." *Zafiro*, 506 U.S. at 539. Neither do they show "a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Id.* Therefore, this Court denies Defendants' motions to sever their joint trial.

**A. Mutually Antagonistic Defenses**

Defendants are not entitled to sever their joint trial based on mutually antagonistic defenses because their defenses are only partially antagonistic. "To warrant severance on the basis of antagonistic defenses, codefendants must show that their defenses are irreconcilable and mutually exclusive." *United States v. Angwin*, 271 F.3d 786, 795 (9th Cir. 2001), *overruled in part on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (en banc). This is a "difficult" burden to meet because it requires more than "'antagonism between defenses or the desire of one defendant to exculpate himself by inculpating a codefendant.'" *United States v. Johnson*, 297 F.3d 845, 858 (9th Cir. 2002) (alteration omitted) (quoting *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996)). Rather, defenses are mutually antagonistic only if "acquittal of one codefendant would necessarily call for the conviction of the other." *Angwin*, 271 F.3d at 795 (quoting *United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991)).

Wells and Bennett argue that severance is required from Williams because Williams's defense is mutually antagonistic to each of their defenses. Bennett Mtn., ECF 115 at 15–17; Wells Mtn., ECF 119 at 3–4. Likewise, Williams argues that his defense is mutually antagonistic

to Bennett's defense.[1] Williams Mem., ECF 111 at 4. Bennett contends that "Mr. Karnezis and Mr. Williams took her personal information and used it to submit loan applications without her knowledge or consent." Bennett Mtn., ECF 115 at 16. Wells also claims that "she acted in good faith and without criminal intent in providing information to Mr. Williams, which unbeknownst to her was used by him and Karnezis to unlawfully obtain PPP funds." Wells Mtn., ECF 119 at 3. However, Williams argues that "Bennett unjustly demonized [him] and implicated him as the driving force behind the fraudulent [PPP] loan scheme." Williams Mem., ECF 111 at 2.

Although these defenses involve each defendant attempting "to exculpate himself [or herself] by inculpating a codefendant," *Johnson*, 297 F.3d at 858, they are not so antagonistic such that "acquittal of one codefendant would necessarily call for the conviction" of another codefendant. *Angwin*, 271 F.3d at 795. Williams does "point[] the proverbial finger" at Bennett, Bennett Mtn., ECF 115 at 15, but critically, Williams also points the finger at Bayless Cobb, who has already pled guilty to conspiracy to commit wire fraud. Williams Mem., ECF 111 at 2–3; *see* Plea Petition and Order Entering Plea as to Defendant Bayless Cobb, *United States v. Cobb*, No. 25-cr-00323 (D. Or. Sept. 9, 2025), Dkt. No. 13. Specifically, Williams claims that Cobb informed him that he could obtain legitimate PPP loans through Karnezis and that "[b]ased upon the assurances of Bayless Cobb," Williams became an "unwitting participant" in the PPP fraud scheme. Williams Mem., ECF 111 at 2. Thus, even if the jury accepts Bennett's defense that "Williams misled her as to the nature of the loan applications," Bennett Mtn., ECF 115 at 15, the jury could still acquit Williams by finding that he unknowingly misled Bennett and Wells as a result of his own "unwitting" reliance on Cobb. Similarly, if the jury were to accept Williams's

---

[1] Williams does not appear to seek severance from Wells. Gov't Resp., ECF 123 at 5 n.2. Regardless, as discussed below, Williams and Wells do not have mutually antagonistic defenses.

PAGE 5 – OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO SEVER

accusations against Cobb but not against Bennett, then the jury would not be "preclude[d]" from acquitting Bennett. *Throckmorton*, 87 F.3d at 1072. Even Bennett herself acknowledges that Williams does not just point the finger only at her but rather "places all criminally fraudulent behavior at the feet of Ms. Bennett *and others*." Bennett Reply, ECF 129 at 6 (emphasis added).

For the same reasons, Wells's and Williams's defenses are not mutually antagonistic as to warrant severance. Like Bennett, Wells will attempt to prove that she was "taken advantage of by Mr. Williams." Wells, ECF 119 at 3–4; *see also* Wells Reply, ECF 135 at 1 ("[B]ecause she was misled and deceived by Mr. Williams as to the purpose and regulations governing the PPP program, at trial she intends to join the government in vigorously prosecuting him."). But once again, Williams will attempt to demonstrate that "Cobb asked [him] for referrals to business owners who may desire PPP loan[s]" and that "Cobb did the rest with Erik Karnezis to close seven PPP loans." Williams Mem., ECF 111 at 3. Under this theory of defense, the jury could find that Cobb and Karnezis are primarily culpable and that both Wells and Williams lacked the requisite criminal intent. Therefore, Wells's and Williams's defenses are only partially antagonistic.

Furthermore, all three defendants point a finger at their fourth codefendant, Karnezis. *See* Williams Mem., ECF 111 at 5 ("Erik Karnezis does not know Fredrico Williams, and all of the fraudulent PPP loan referrals came to Erik Karnezis through the unindicted co-conspirator, Bayless Cobb."); Bennett Mtn., ECF 115 at 15 ("[I]t was Mr. Williams who engaged in misconduct with Mr. Karnezis without Ms. Bennett's knowledge or agreement."); Wells Mtn., ECF 119 at 3("[I]nformation . . . was used by [Williams] and Karnezis to unlawfully obtain PPP funds."); Bennett Reply, ECF 129 at 5 ("Mr. Karnezis signed all of the various submissions and documentations as Ms. Bennett without her knowledge, understanding, or permission."). The

PAGE 6 – OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO SEVER

jury could therefore "pin the blame solely" on Karnezis, who already pled guilty, and acquit his three codefendants who are on trial. Gov't Resp., ECF 123 at 13. In sum, because "acquittal of one codefendant would" not "necessarily call for the conviction" of any other codefendant, severance is unwarranted based on mutually antagonistic defenses. *Angwin*, 271 F.3d at 795.

## B. Confrontation Clause

Defendants next argue that a joint trial would violate their Confrontation Clause rights, but their arguments do not justify severance because any potential violations of *Bruton v. United States*, 391 U.S. 123 (1968), may be avoided by redacting statements that implicate *Bruton* and providing accompanying limiting instructions. In *Bruton*, the Supreme Court "held that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987). In *Richardson*, the Supreme Court "declined to expand the *Bruton* rule to a redacted confession that inculpated the defendant only when viewed in conjunction with other evidence." *Samia v. United States*, 599 U.S. 635, 649 (2023). In *Samia*, the Court clarified that the admission of a codefendant's confession that replaces the defendant's name with "neutral references to some 'other person'" and is "accompanied by a limiting instruction" that the confession be used only against the codefendant declarant "falls outside the narrow exception *Bruton* created." *Id.* at 653 (brackets omitted) (quoting *Richardson*, 481 U.S. at 208).

Defendants argue that a joint trial would violate their Confrontation Clause rights because they would not be able to cross-examine their codefendants about incriminating confessions. *See* Williams Mem., ECF 111 at 5; Bennett Mtn., ECF 115 at 17–19; Wells Mtn., ECF 119 at 7. Williams points to interviews recorded by federal agents in which Bennett "unjustly demonized" him and "implicated him as the driving force behind the fraudulent [PPP] loan scheme."

PAGE 7 – OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO SEVER

Williams Mem., ECF 111 at 2. Bennett points to "numerous statements where [Mr. Williams] attempts to position Ms. Bennett as primarily responsible for collecting and assembling 'customer' information." Bennett Mtn., ECF 115 at 18. Bennett also refers to Wells's statements that inculpate Bennett, such as Wells's assertion that "Bennett may have been the one to fill out a loan forgiveness application submitted in [Wells's] name." *Id.* Wells seconds Bennett's claims that they "have made statements incriminating each other." Wells Mtn., ECF 119 at 7.

Defendants' Confrontation Clause concerns fail because if any party seeks to introduce a statement that implicates *Bruton*, then the statement must be redacted and a limiting instruction must be provided in accordance with *Samia*.[2] *See Hernandez-Orellana*, 539 F.3d at 1001 (finding no Confrontation Clause violation from the district court's denial of severance because "the government was required to redact any damaging statements"). Indeed, instead of severing a trial in response to a *Bruton* problem, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539 (citing *Richardson*, 481 U.S. at 211). In short, Defendants' speculative concern that Confrontation Clause violations will occur at trial do not support severance. Rather, if any defendant seeks to introduce a codefendant's statement that implicates *Bruton*, all parties should confer and provide this Court a redacted statement and an accompanying limiting instruction that are in accordance with *Samia*.

---

[2] During the hearing on Defendants' motions, ECF 144, the government represented that it would not seek introduction of any statements implicating the *Bruton* doctrine at trial. But even if the government does not introduce such statements, Defendants may seek to introduce such statements against each other. To the extent any defendant seeks to introduce statements of a codefendant that implicates *Bruton*, the proponent must identify and disclose the statements to codefendants and the government at least twenty-one days in advance of the pretrial conference.

PAGE 8 – OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO SEVER

Bennett and Wells also argue that they will be prejudiced by the other's invocation of the marital communications privilege,[3] Bennett Mtn., ECF 115 at 19–20; Wells Mtn., ECF 119 at 7–8, but their arguments fail for two reasons. First, this privilege, which "protects from disclosure private communications between spouses," "does not apply to statements made in furtherance of joint criminal activity." *United States v. Banks*, 556 F.3d 967, 974 (9th Cir. 2009) (first quoting *United States v. Griffin*, 440 F.3d 1138, 1143–44 (9th Cir. 2006); and then quoting *United States v. Marashi*, 913 F.2d 724, 731 (9th Cir. 1990)). Thus, Bennett and Wells could not invoke this privilege to prevent the other from testifying about "communications having to do with present or future crimes in which both spouses are participants." *Marashi*, 913 F.2d at 730; *see* Bennett Reply, ECF 129 at 15 (recognizing this).

Second, the potential exclusion of any statements due to the invocation of this privilege does not rise to the level of "'clear,' 'manifest,' or 'undue' prejudice from a joint trial." *Mikhel*, 889 F.3d at 1046 (quoting *Polizzi*, 801 F.2d at 1553–54). Bennett and Wells each speculate that "in presenting her defense that she was misled by Mr. Williams, [she] may present evidence of discussions between her and [her spouse] to put those matters in context." Bennett Mtn., ECF 115 at 20; Wells Mtn., ECF 119, at 8. For example, Bennett claims that she may present marital communications "about matters involving Mr. Williams to put her work as his scrivener in context." Bennett Reply, ECF 129 at 16. Even assuming that such contextual statements were not made in furtherance of joint criminal activity, their exclusion does not establish "'clear,'

---

[3] In her motion to sever, Bennett also raised an argument based on the marital *testimonial* privilege. Bennett Mtn., ECF 115 at 20; *see United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004) ("The witness spouse alone holds th[is] privilege and may choose to waive it."). Bennett withdrew this argument in her reply brief. Bennett Reply, ECF 129 at 15 n.3.

PAGE 9 – OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO SEVER

'manifest,' or 'undue' prejudice" *Mikhel*, 889 F.3d at 1046 (quoting *Polizzi*, 801 F.2d at 1553–54).[4]

## C. Exclusion of Evidence

Bennett and Wells also briefly argue that joinder with Williams will prevent them from introducing evidence related to Williams's "military history records, including the nature of his less than honorable discharge, and his predatory behavior against women." Bennett Mtn., ECF 115 at 25; *see* Wells Mtn., ECF 119 at 4. Bennett and Williams also plan to present evidence that they were victims of sexual assault while in the military, Bennett Mtn., ECF 115 at 4; Wells Mtn., ECF 119 at 5, as well as potential evidence of Williams's court martial for obstruction of justice, *see* Gov't Resp., ECF 123 at 24. As to evidence of Williams's conduct, such evidence is likely inadmissible under Federal Rule of Evidence 404(b). For any impeachment evidence, Bennett and Wells have not shown such evidence would be excluded from a joint trial. And, as to evidence of past sexual assaults, such evidence is likely inadmissible under Rule 401. *See* Gov't Resp., ECF 123 at 25 ("[T]here is no evidence that any of their prior experiences with sexual misconduct has anything to do with their PPP fraud scheme."). In any event, the exclusion of what is, at best, tangentially relevant evidence to the crimes at issue in this case does not constitute manifest prejudice as to warrant severance.

## D. Juror Confusion

Finally, Bennett and Wells argue that in a joint trial, "jurors are likely to cumulate evidence in a way that risks confusing Williams's culpability for an independent assessment of

---

[4] Williams also argues that "the government should produce Erik Karnezis an[d] Bayless Cobb to avoid prejudice and uphold Fredrico Williams Confrontation [Clause] rights." Williams Mem., ECF 111 at 5 (capitalization altered). If Williams intends to move to compel Karnezis and Cobb to testify at trial, Williams must comply with L.R. 7. Regardless, the government "intends to call both of them[, Karnezis and Cobbs,] to testify at trial." Gov't Resp., ECF 123 at 13 n.5.

[their] guilt or innocence." Bennett Mtn., ECF 115 at 21; Wells Mtn., ECF 119 at 5. Bennett also speculates that jurors may do the same with respect to evidence against Wells. Bennett Mtn., ECF 115 at 24–25. These arguments fail because they amount to an attack on "the law's broader assumption that jurors can be relied upon to follow the trial judge's instructions." *Samia*, 599 U.S. at 646. In this case, the jury may reasonably be expected to collate and appraise the individual evidence against each defendant, and this Court will instruct the jury on the limited purposes for which certain evidence may be used). In sum, Defendants have not shown a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

## CONCLUSION

Defendant Williams's motion to sever, ECF 110; Defendant Bennett's motion to sever, ECF 115; and Defendant Wells's motion to sever, ECF 119, are DENIED.

**IT IS SO ORDERED.**

DATED this 9th day of January, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge