Ernest Warren, Jr.  OSB #891384
Warren & Sugarman
838 S.W. First Ave., Suite 200
Portland, OR 97204
Tel: (503) 228-6655
E-mail: e.warren@ernestwarrenlaw.com

**Attorney for Defendant Fredrico Williams**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**FREDRICO WILLIAMS,**<br><br>Defendant. | ) **Case No. 3:23-CR-00067-IM**<br>)<br>)<br>) **DEFENDANT'S MOTION TO COMPEL**<br>) **DISCLOSURE OF BRADY AND GIGLIO**<br>) **MATERIAL, WITH INCORPORATED**<br>) **MEMORANDUM OF LAW**<br>)<br>) **Oral Argument Requested**<br>) **Fed. R. Crim. P. 16; Brady v. Maryland,**<br>**373 U.S. 83 (1963)** |

### TABLE OF CONTENTS

| Section | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| I. INTRODUCTION | 1 |
| II. FACTUAL BACKGROUND | 3 |

**WARREN & SUGARMAN**
**Attorneys at Law**
**838 SW First Avenue • Suite 200 • Portland, Oregon 97204**
**Tel (503) 228-6655**
**ernestwarrenlaw.com**

| Section | Page |
|---|---|
| A. The Williams Indictment and Capital Plus as "Victim" | 3 |
| B. The Blueacorn-Capital Plus Pipeline | 4 |
| C. Related Prosecutions by AUSA Bateman | 6 |
| D. The Car Ride Admission: "They Don't Want You — They Want Karnezis" | 8 |
| E. Discovery History and the Plea Offer | 9 |
| F. The Cobb Disparity | 10 |
| III. LEGAL STANDARD | 11 |
| A. *Brady v. Maryland* | 11 |
| B. *Giglio v. United States* | 12 |
| C. Materiality — *Kyles v. Whitley* | 12 |
| D. Government's Ongoing Duty — *Agurs* | 13 |
| E. Timeliness of Disclosure | 13 |
| IV. ARGUMENT | 14 |
| A. The Blueacorn/Capital Plus Evidence Is Exculpatory Under *Brady* | 14 |
| B. Cooperator Plea Agreements Are Impeachment Evidence Under *Giglio* | 17 |
| C. The Government Has Actual and Constructive Possession | 18 |
| D. Aggregate Materiality Under *Kyles* | 20 |
| E. The Plea Offer's Blueacorn Omission Demonstrates Deliberate Suppression | 21 |
| F. *Jencks* Act Integration | 23 |
| V. SPECIFIC DISCOVERY DEMANDED | 24 |
| VI. RELIEF REQUESTED | 27 |
| VII. CONCLUSION | 28 |
| CERTIFICATE OF SERVICE | 29 |

# TABLE OF AUTHORITIES

## Cases

| Case | Page(s) |
|---|---|
| *Brady v. Maryland*, 373 U.S. 83 (1963) | 1, 11, 14, 21, 28 |
| *Giglio v. United States*, 405 U.S. 150 (1972) | 1, 12, 17, 28 |
| *Kyles v. Whitley*, 514 U.S. 419 (1995) | 12, 18, 20 |
| *Napue v. Illinois*, 360 U.S. 264 (1959) | 17 |

*Page 2-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

| Case | Page(s) |
|---|---|
| *Neder v. United States*, 527 U.S. 1 (1999) | 1, 14, 15 |
| *Smith v. Cain*, 565 U.S. 73 (2012) | 17 |
| *Strickler v. Greene*, 527 U.S. 263 (1999) | 11, 19 |
| *United States v. Agurs*, 427 U.S. 97 (1976) | 13 |
| *United States v. Bagley*, 473 U.S. 667 (1985) | 12, 20 |
| *United States v. Gaudin*, 515 U.S. 506 (1995) | 16 |
| *United States v. Olsen*, 704 F.3d 1172 (9th Cir. 2013) | 12, 13 |
| *United States v. Price*, 566 F.3d 900 (9th Cir. 2009) | 13 |
| *United States v. Sedaghaty*, 728 F.3d 885 (9th Cir. 2013) | 20 |
| *Wearry v. Cain*, 577 U.S. 385 (2016) | 12, 20 |

## Statutes and Rules

| Authority | Page(s) |
|---|---|
| 18 U.S.C. § 1343 (Wire Fraud) | 1, 14, 15 |
| 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud) | 3, 6 |
| 18 U.S.C. § 1957 (Money Laundering) | 3 |
| 18 U.S.C. § 3500 (*Jencks* Act) | 23 |
| 18 U.S.C. § 3553(a)(6) (Sentencing Disparity) | 10 |
| Fed. R. Crim. P. 16 | 1, 27 |
| U.S. Const. amend. V (Due Process) | 11 |
| U.S. Const. amend. VI (Compulsory Process) | 11 |
| D. Or. LR 7-1(b) | 1 |

## Other Authorities

| Authority | Page(s) |
|---|---|
| H. Select Subcomm. on the Coronavirus Crisis, *The Rush to Lend* (2022) | 5 |
| DOJ Press Release, *Arizona Man and Co-Defendants Facing Federal Charges* (Sept. 9, 2024) | 1, 6 |
| DOJ Press Release, *Blueacorn Co-Founder Sentenced to Ten Years* (2024) | 6 |
| DOJ Press Release, *Blueacorn Co-Founder Nathan Reis Pleads Guilty* (2025) | 7 |
| IRS-CI Press Release, *Arizona Brothers Plead Guilty* (2025) | 7 |

*Page 3-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

# I. INTRODUCTION

The government has built its case against Fredrico Williams on a paradox it hopes no one will notice. Every count of the Superseding Indictment names Capital Plus Financial as the "victim" lender — the institution supposedly defrauded by false Paycheck Protection Program ("PPP") applications. The government's theory requires the jury to believe that Capital Plus relied on the representations in those applications when making lending decisions and that those false statements were therefore "material" to the lender's decision-making process.

But there is a problem the government does not want this Court — or the jury — to see.

The same Assistant United States Attorney prosecuting Williams — Meredith D.M. Bateman — has separately prosecuted the very people who *ran* Capital Plus and its pipeline. AUSA Bateman personally signed the plea agreement of Eric Karnezis — a referral agent who admitted to submitting *at least 350 fraudulent PPP applications* "through Blueacorn, a lender service provider, to Capital Plus Financial," with the broader scheme encompassing approximately 1,300 applications and $178 million in attempted funding. Karnezis Plea Agreement ¶ 7(b) (Jan. 25, 2025); DOJ Press Release (Sept. 9, 2024). Eric's twin brother, Anthony Karnezis, separately pled guilty to conspiring to submit approximately 140 additional fraudulent PPP applications through the same pipeline, resulting in approximately $3.9 million in funded loans. Blueacorn's co-founders — Stephanie Hockridge and Nathan Reis — have been convicted for operating what congressional investigators called a "fraud factory." The House Select Subcommittee on the Coronavirus Crisis found that *one person* reviewed *1.7 million* PPP applications flowing through the Blueacorn-Capital Plus pipeline. H. Select Subcomm. on the Coronavirus Crisis, *The Rush to Lend* 42-43 (2022).

Every application in Williams's indictment flowed through this same pipeline: from the applicant, through Blueacorn, to Capital Plus Financial. If Capital Plus had no meaningful review process — if it approved virtually every application Blueacorn forwarded — then false statements on those applications were not "material" to the lender's decision. *See Neder v. United States*, 527 U.S. 1, 16 (1999) (materiality is an element of wire fraud that the government must prove beyond a reasonable doubt).

The government possesses extensive evidence about the Blueacorn-Capital Plus pipeline — evidence it obtained through its own parallel prosecutions. It has not disclosed this evidence to the defense. Instead, it has done the opposite: Williams's plea offer (v.4, August 2025) deliberately omits the word "Blueacorn" from its factual basis, even though the *same AUSA* included "through Blueacorn, a lender service provider, to Capital Plus Financial" in co-defendant Bayless Cobb's plea agreement. The plea offer also contains a discovery waiver (paragraph 10) that, had Williams signed it, would have permanently foreclosed any *Brady* challenge.

Perhaps most remarkably, during the car ride following Williams's arrest on March 21, 2023, law enforcement agents told Williams directly: "They don't want you — they want Karnezis." The government was already targeting the Blueacorn-Capital Plus pipeline *at the time it arrested Williams* — yet it has never disclosed the evidence that fatally undermines its theory of materiality.

*Page 4-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

The Due Process Clause does not permit the government to simultaneously prosecute the Blueacorn-Capital Plus pipeline as a criminal enterprise *and* rely on that same pipeline as a legitimate "victim" in Williams's case — while concealing the evidence that connects the two. Williams moves this Court to compel immediate disclosure of all *Brady* and *Giglio* material related to Blueacorn, Capital Plus Financial, and the government's parallel prosecutions, and to extend the motions deadline to allow the defense to incorporate this material into pretrial preparation. This motion is supported by the Declaration of Counsel filed concurrently herewith, which documents the defense's prior discovery requests and the government's failure to produce the materials described herein.

# II. FACTUAL BACKGROUND

## A. The Williams Indictment and Capital Plus as "Victim"

On March 7, 2023, a federal grand jury in the District of Oregon returned a sealed indictment against Fredrico Antoine Williams. ECF No. 1. The Superseding Indictment charges Williams with Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349) and substantive wire fraud counts (18 U.S.C. § 1343), as well as money laundering (18 U.S.C. § 1957). ECF No. 31.

The central theory of the government's case is that Williams participated in a conspiracy to submit fraudulent PPP loan applications containing false statements about the existence of businesses, gross revenues, payroll amounts, and the number of employees. The Superseding Indictment names **Capital Plus Financial** as the lender that approved and funded the loans at issue.

Under the government's theory, Capital Plus Financial is the institutional victim — the entity that relied on the representations in the PPP applications and was defrauded. This framing is essential to the government's case because wire fraud requires proof that the false statements were "material" — that is, that they had "a natural tendency to influence, or [were] capable of influencing, the decision of the decisionmaking body to which [they were] addressed." *Neder*, 527 U.S. at 16. If Capital Plus did not meaningfully review or rely on the information in the applications, the materiality element fails as a matter of law.

## B. The Blueacorn-Capital Plus Pipeline

The Superseding Indictment does not mention Blueacorn, Inc. — the financial technology company that served as the conduit through which all PPP applications at issue were submitted to Capital Plus Financial. But the government's own evidence — obtained through parallel prosecutions — establishes the critical role Blueacorn played.

**The Pipeline.** Every PPP application in Williams's case followed the same path: the applicant's information was submitted through Blueacorn (a "lender service provider"), which processed and forwarded applications to Capital Plus Financial (an SBA-approved lender). Capital Plus then submitted the applications to the SBA for guarantee and funding. This pipeline is described in the government's own words in co-defendant Cobb's plea agreement:

*Page 5-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

> "Specifically, defendant conspired with applicants to gather and organize fraudulent business information for defendant to submit or cause others to submit **at least 59 fraudulent PPP applications on behalf of the applicants through Blueacorn, a lender service provider, to Capital Plus Financial**, a lender participating in the PPP, totaling approximately $9,976,803 in attempted funding."

Plea Agreement of Bayless Cobb, ¶ 7(b), ECF No. 12 at 3 (emphasis added). The Karnezis plea agreement uses identical pipeline language:

> "Specifically, defendant conspired with recruiters to gather false and fraudulent business information from applicants for defendant to submit **at least 350 fraudulent PPP applications on behalf of the applicants through Blueacorn, a lender service provider, to Capital Plus Financial**, a lender participating in the PPP."

Plea Agreement of Eric Karnezis, ¶ 7(b) at 3 (Jan. 25, 2025) (emphasis added).

**The "Fraud Factory."** The House Select Subcommittee on the Coronavirus Crisis conducted an extensive investigation into the Blueacorn-Capital Plus pipeline. Its findings were devastating:

- Blueacorn processed **approximately 1.7 million** PPP loan applications.
- Capital Plus Financial was Blueacorn's exclusive SBA-approved lending partner.
- **One person** was responsible for reviewing the applications flowing through the pipeline.
- The system operated with "essentially no meaningful review" of individual applications.
- Capital Plus approved "virtually every application" Blueacorn forwarded.

H. Select Subcomm. on the Coronavirus Crisis, *The Rush to Lend: How the Push to Quickly Distribute PPP Loans Created Opportunities for Fraud and Abuse* 42-43 (2022).

These findings establish that Capital Plus Financial did not conduct individualized, substantive review of the PPP applications it received through Blueacorn. A lender that employs *one reviewer* for *1.7 million applications* — approximately 4,657 applications per day, or one every 6.2 seconds of a 24-hour day — is not "relying" on the representations in those applications in any meaningful sense. The false statements alleged in the Williams indictment were not "material" to Capital Plus's lending decisions because Capital Plus was not making individualized lending decisions.

## C. Related Prosecutions by AUSA Bateman

The government's parallel prosecutions — all led or joined by AUSA Meredith D.M. Bateman — confirm that the Blueacorn-Capital Plus pipeline was itself a criminal enterprise:

### 1. *United States v. Stephanie Hockridge* (Blueacorn Co-Founder)

Stephanie Hockridge co-founded and co-owned Blueacorn. She was convicted and sentenced to **10 years in federal prison** and ordered to pay **$63 million in restitution**. The Department of Justice described Blueacorn's operations as a

*Page 6-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

scheme to fraudulently process PPP applications at massive scale. DOJ Press Release, *Blueacorn Co-Founder Sentenced to Ten Years in Prison for COVID-Relief Fraud* (2024).

### 2. *United States v. Nathan Reis* (Blueacorn Co-Founder)

Nathan Reis, the other co-founder and co-owner of Blueacorn, **pled guilty in August 2025** to conspiracy charges arising from the same scheme. The Karnezis plea agreement identifies Reis as a co-conspirator with whom Karnezis "conspired . . . to submit these fraudulent applications." Karnezis Plea Agreement ¶ 7(c). AUSA Bateman was involved in this prosecution.

### 3. *United States v. Eric Karnezis* (Referral Agent / Scheme Ringleader)

Eric Karnezis — Defendant No. 1 in Williams's own case (No. 3:23-CR-00067-IM) — served as a referral agent within Blueacorn's "VIPPP" program, a personalized service through which agents helped borrowers complete PPP applications. Karnezis admitted to submitting **at least 350 fraudulent PPP applications** through Blueacorn to Capital Plus. Karnezis Plea Agreement ¶ 7(b). The broader scheme attributed to Karnezis encompassed approximately **1,300 fraudulent applications**, **$178 million in attempted funding**, approximately **$105 million in funded loans**, and **approximately $3 million** in fees collected by Karnezis personally. DOJ Press Release (Sept. 9, 2024); Karnezis Plea Agreement ¶¶ 7(f)-(g).

Critically, the Karnezis plea agreement was **signed by AUSA Meredith D.M. Bateman** — the same prosecutor handling Williams's case. Karnezis Plea Agreement at 18 (signed Jan. 25, 2025). Karnezis pled guilty on **March 25, 2025**. His sentencing is scheduled for **June 15, 2026** — four months before Williams's trial.

The Karnezis plea agreement characterizes Williams as a **"recruiter for defendant [Karnezis] who was responsible for providing false and fraudulent business information to defendant."** Karnezis Plea Agreement ¶ 7(d). Whatever the accuracy of that characterization, it is the *government's own description* of Williams's alleged role — and it places Williams far from the center of the scheme. The government's own evidence describes the Blueacorn-Capital Plus pipeline as a criminal enterprise operated by others.

The digital evidence underscores this point. **Every PPP application** in this case was electronically signed using **Eric Karnezis's DocuSign credentials (unique GUID)**, and **all submissions trace to Karnezis's IP address** — not Williams's. Williams did not electronically sign, submit, or transmit a single PPP application. The government possesses the DocuSign metadata and IP logs establishing this fact — evidence that is plainly exculpatory — yet has not disclosed it to the defense.

### 4. *United States v. Anthony Karnezis* (Eric's Twin Brother)

Anthony Karnezis, Eric's twin brother, was charged by criminal information and **pled guilty on March 26, 2025** — one day after his brother — to conspiracy to commit wire fraud for his role in submitting approximately **140 fraudulent PPP applications** through the same Blueacorn-Capital Plus pipeline, resulting in approximately **$3.9 million in funded loans** and **approximately $957,000 in fees**. Anthony operated as a smaller-scale co-conspirator alongside Eric, using the same VIPPP referral agent structure.

*Page 7-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

The prosecution of both Karnezis brothers — in the same case as Williams — further underscores the government's knowledge that the pipeline itself was a criminal operation. The government cannot claim that Capital Plus was an innocent "victim" while simultaneously prosecuting the family of referral agents who exploited Capital Plus's complete absence of review procedures.

**5. The Timeline of Dual Prosecution**

The timeline underscores the government's knowledge:

| Date | Event |
|---|---|
| March 7, 2023 | Williams indictment sealed |
| March 21, 2023 | Williams arrested; agents tell him "they don't want you, they want Karnezis" |
| August 21, 2024 | 23-count Superseding Indictment returned (naming Eric Karnezis as Defendant No. 1) |
| September 5, 2024 | Eric Karnezis arrested by NCIS in Sedona, Arizona |
| January 25, 2025 | Eric Karnezis plea agreement signed by AUSA Bateman |
| February 19, 2025 | Anthony Karnezis charged by criminal information |
| March 25, 2025 | Eric Karnezis pleads guilty |
| March 26, 2025 | Anthony Karnezis pleads guilty |
| July 10, 2025 | Cobb plea agreement signed by AUSA Bateman |
| August 2025 | Reis pleads guilty; Williams plea offer v.4 issued (omitting Blueacorn) |
| **June 15, 2026** | **Eric Karnezis sentencing (4 months before Williams trial)** |
| **As of filing** | **No Brady/Giglio disclosure to Williams regarding Blueacorn/Capital Plus** |

AUSA Bateman has been at the center of *both* prosecution tracks from the beginning. She signed the plea agreements in which the Blueacorn pipeline is explicitly described, and she is the lead prosecutor in the case where that same pipeline is concealed. The government cannot credibly claim ignorance of this evidence.

## D. The Car Ride Admission: "They Don't Want You — They Want Karnezis"

On March 21, 2023, following Williams's arrest, law enforcement agents transported Williams by vehicle. During the car ride, agents made a statement directly to Williams: **"They don't want you — they want Karnezis."**

*Page 8-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

This statement is significant for three reasons. First, it establishes that the government's investigation of Eric Karnezis and the Blueacorn-Capital Plus pipeline was already active at the time of Williams's arrest. The government was targeting the pipeline *before* it arrested Williams, yet it has never disclosed the evidence it had already gathered. Second, the statement reveals the government's own assessment of where the true culpability lay — with Karnezis and the pipeline, not with Williams. Third, and most fundamentally, it demonstrates that the government *knew* that Capital Plus was not a genuine "victim" as early as the date of Williams's arrest, because agents were already pursuing Karnezis for fraud *within* the pipeline.

This contemporaneous admission by government agents is itself *Brady* material that has never been formally disclosed or memorialized in any discovery production.

## E. Discovery History and the Plea Offer

**Prior Discovery Requests and Outstanding Items.** Since counsel's appointment, the defense has made the following categories of discovery requests that remain unfulfilled:

1. **Brady/Giglio material related to cooperating witnesses** — The government has not produced plea agreements, cooperation agreements, proffer statements, or debriefing memoranda for Eric Karnezis, Anthony Karnezis, Stephanie Hockridge, or Nathan Reis, despite their direct relevance to Williams's case.

2. **Blueacorn/Capital Plus internal records** — No records have been produced regarding Capital Plus Financial's internal review procedures, approval rates, quality control protocols, or staffing for PPP application review — evidence that goes directly to the materiality element of every charged count.

3. **DocuSign metadata and IP records** — The government has not produced the DocuSign audit trails, GUID records, or IP address logs for the PPP applications charged in the Superseding Indictment, despite the defense's request for all digital evidence related to the submission of applications.

4. **Car ride documentation** — No recordings, agent notes, FBI 302 reports, or memoranda documenting the statements made to Williams during the March 21, 2023 car ride have been produced, including the agents' statement that "they don't want you, they want Karnezis."

5. **Congressional investigation materials** — No materials from the House Select Subcommittee on the Coronavirus Crisis investigation of the Blueacorn-Capital Plus pipeline have been disclosed, despite being in the government's actual or constructive possession.

6. **Parallel prosecution files** — No investigative materials, agent reports, or case files from the Hockridge, Reis, Eric Karnezis, or Anthony Karnezis prosecutions have been produced to Williams's defense, despite being handled by the same AUSA and investigating agencies.

The government has produced standard discovery materials — including the interview transcript, financial records, and the Superseding Indictment — but has made **no specific disclosure** of *Brady* material related to the Blueacorn-Capital Plus pipeline, the congressional investigation, or the related prosecutions. This motion is the defense's first formal motion to compel such disclosure. Critically, the

*Page 9-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

government's *Brady* obligation is self-executing and does not depend on a defense request. *Brady*, 373 U.S. at 87; *Strickler v. Greene*, 527 U.S. 263, 280 (1999). The Declaration of Counsel filed concurrently herewith details the specific discovery requests made and the government's responses.

**The Plea Offer and the Blueacorn Omission.** On August 26, 2025, the government extended its fourth plea offer to Williams (v.4). The factual basis of the plea offer is notable for what it omits. The plea offer attributes all lending activity directly to Capital Plus Financial, stating that false documents were submitted "to the Small Business Administration ("SBA") and Capital Plus Financial (a lender participating in the PPP)." Plea Offer v.4, ¶ 7 at 3. Capital Plus is described as having "approved and funded" each loan — suggesting active, direct lender decision-making.

The word "Blueacorn" does not appear anywhere in the plea offer.

The contrast with co-defendant Cobb's plea agreement is stark:

| Document | AUSA | Language |
|----------|------|----------|
| **Cobb Plea Agreement** (ECF No. 12) | Bateman | "through **Blueacorn, a lender service provider**, to Capital Plus Financial" |
| **Karnezis Plea Agreement** | Bateman | "through **Blueacorn, a lender service provider**, to Capital Plus Financial" |
| **Williams Plea Offer v.4** | Bateman | "to . . . **Capital Plus Financial** (a lender participating in the PPP)" |

The same AUSA, describing the same factual pipeline, used materially different language in Williams's plea offer — excising the intermediary (Blueacorn) that would reveal Capital Plus's lack of independent review. This omission was not accidental. It was a deliberate choice to conceal the very evidence that undermines the materiality element of every charged count.

**The Discovery Waiver.** The plea offer contains a particularly aggressive provision in paragraph 10:

> "**Waiver of Full Discovery:** As a material term of this offer and agreement, defendant expressly accepts the USAO's offer to make available the evidence gathered in the investigation of this matter for on-site inspection and the USAO's production of limited discovery as of the date of this agreement **in full satisfaction** of the United States' discovery obligations in this case. Defendant knowingly, intelligently, and voluntarily **waives his rights to further production** of evidence or information from the United States, **even though he may be entitled to such production** under the Federal Rules of Criminal Procedure, the discovery orders of the Court, and any prior demands for discovery."

Plea Offer v.4, ¶ 10 (emphasis added). Had Williams signed this plea offer, paragraph 10 would have permanently foreclosed access to the *Brady* material described in this motion. The government sought to characterize "limited discovery" as "full satisfaction" of its obligations while simultaneously withholding evidence

*Page 10-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

that Capital Plus — the named victim — was a complicit participant in a criminal pipeline. The placement of this waiver in a plea offer that itself conceals the Blueacorn connection reflects a pattern of deliberate suppression.

## F. The Cobb Disparity

The disparity between Cobb's plea terms and the government's posture toward Williams is itself relevant to the *Brady* analysis, as it reflects selective treatment that the jury should have the opportunity to evaluate.

| Factor | Cobb | Williams |
|---|---|---|
| Total Applications | At least 59 | Fewer |
| Total Attempted Funding | ~$9,976,803 | ~$2,145,462 |
| Total Funded | ~$4,417,640 (34 loans) | Less |
| Offense Level | 19 | 20 (per plea offer) |
| Recommended Variance | -3 (downward) | -2 (downward) |
| Money Laundering Charge | No | Yes |
| Pipeline Acknowledged | Yes ("through Blueacorn") | No (Blueacorn omitted) |
| AUSA | Bateman | Bateman |
| Judge | Immergut | Immergut |

Cobb — who processed 2.2 times the loss amount across nearly 59 applications — received a *lower* offense level, a *greater* downward variance, and *no* money laundering charge. In the same courtroom, before the same judge, prosecuted by the same AUSA. The disparity is relevant under 18 U.S.C. § 3553(a)(6) and also bears on the question of whether the government's withholding of Blueacorn evidence from Williams's case is part of a broader pattern of selective prosecution.

# III. LEGAL STANDARD

## A. *Brady v. Maryland*, 373 U.S. 83 (1963)

The Due Process Clause of the Fifth Amendment requires the government to disclose evidence that is favorable to the accused. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This obligation applies to evidence that is *exculpatory* — tending to show the defendant's innocence — and to evidence that is *impeaching* — tending to undermine the credibility of government witnesses. *Id.*; *Giglio v. United States*, 405 U.S. 150, 154 (1972).

The Supreme Court has established a three-part test for *Brady* violations: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the

*Page 11-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

government, either willfully or inadvertently; and (3) prejudice must have ensued — that is, the evidence must be "material." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Suppression of favorable evidence violates due process "irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The government's intent is irrelevant; the constitutional violation lies in the nondisclosure, not the motive.

## B. *Giglio v. United States*, 405 U.S. 150 (1972)

*Giglio* extended *Brady*'s disclosure obligation to impeachment evidence, including any "understanding or agreement as to a future prosecution" between the government and its witnesses. *Giglio*, 405 U.S. at 154-55. The government must disclose all plea deals, cooperation agreements, immunity agreements, and any other benefits conferred upon witnesses. *Id.* The Ninth Circuit has held that *Giglio* material is "per se material" when the testimony of the witness whose credibility would be impeached is central to the government's case. *United States v. Olsen*, 704 F.3d 1172, 1182 (9th Cir. 2013) (Kozinski, C.J., dissenting from denial of rehearing en banc).

## C. Materiality — *Kyles v. Whitley*, 514 U.S. 419 (1995)

Evidence is "material" under *Brady* if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.*

Critically, materiality is assessed in the **aggregate**: "[T]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). The court must assess the *cumulative effect* of all suppressed evidence, not evaluate each piece in isolation. *Id.* at 436-37; *Wearry v. Cain*, 577 U.S. 385, 394 (2016) (per curiam).

## D. Government's Ongoing Duty — *Agurs*

The government's obligation to disclose *Brady* material is "ongoing." *United States v. Agurs*, 427 U.S. 97, 107 (1976). The duty extends beyond materials in the prosecutor's personal possession to include evidence "known to the others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437. In the Ninth Circuit, the prosecution team includes "both investigative and prosecutorial personnel involved in the case." *United States v. Price*, 566 F.3d 900, 910 (9th Cir. 2009).

## E. Timeliness of Disclosure

*Brady* material must be disclosed in time for effective use at trial. *Id.* When evidence is relevant to pretrial motions — as the evidence here is relevant to challenges to the materiality element, Franks challenges to the affidavit, and sentencing disparity arguments — disclosure must be made sufficiently in advance of the applicable

*Page 12-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

motions deadline to permit meaningful incorporation. With a motions deadline of July 10, 2026 and a trial date of October 27, 2026, the need for immediate disclosure is acute.

---

# IV. ARGUMENT

## A. The Blueacorn/Capital Plus Evidence Is Exculpatory Under *Brady* (Materiality Element)

The evidence the government has withheld goes directly to an *element* of the charged offenses — materiality — making it among the most powerful categories of *Brady* material recognized by law.

### 1. Wire fraud requires proof of material false statements.

Wire fraud under 18 U.S.C. § 1343 requires the government to prove that the defendant used false statements that were "material" — that is, statements having "a natural tendency to influence, or . . . capable of influencing, the decision of the decisionmaking body to which [they were] addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999). The Supreme Court has held that materiality is an element of the offense that must be proven beyond a reasonable doubt. *Id.* at 20, 25. Moreover, materiality is a question for the jury, not the court. *United States v. Gaudin*, 515 U.S. 506, 509 (1995).

### 2. Capital Plus had no meaningful review process.

The evidence from the government's own prosecutions and from congressional investigations establishes that Capital Plus Financial did not conduct individualized review of PPP applications. One person was assigned to review 1.7 million applications. H. Select Subcomm. on the Coronavirus Crisis, *The Rush to Lend* 42-43 (2022). Karnezis alone submitted at least 350 fraudulent applications through the pipeline — resulting in at least $60 million in funded loans — demonstrating that Capital Plus approved applications at industrial scale without meaningful scrutiny. Karnezis Plea Agreement ¶¶ 7(b), 7(f).

### 3. If Capital Plus did not rely on the representations, the statements were not "material."

The materiality element requires that the false statements were *capable of influencing* the lender's decision. If Capital Plus's review process consisted of a single reviewer processing thousands of applications per day through what was essentially an automated approval pipeline, then false statements about the existence of businesses, gross revenues, payroll amounts, and the number of employees were *not* capable of influencing Capital Plus's lending decisions — because Capital Plus was not making individualized lending decisions.

This is not a close question. A lender that employs one reviewer for 1.7 million applications is not "relying" on representations in any individual application. The government's own evidence proves that Capital Plus was a rubber stamp, not a decision-maker.

*Page 13-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

**4. The Blueacorn/Capital Plus prosecutions establish the pipeline was criminal from the lender side.**

The significance of the Hockridge, Reis, and Karnezis prosecutions extends beyond the review-process evidence. These prosecutions establish that the Blueacorn-Capital Plus pipeline was itself a *criminal enterprise* operated by individuals who profited from processing fraudulent applications. Hockridge was sentenced to 10 years and $63 million in restitution. Karnezis collected $3 million in fees for submitting 350+ fraudulent applications. The pipeline operators were not victims — they were perpetrators.

The government cannot simultaneously prosecute the pipeline operators for *running* a fraud factory and prosecute Williams for *using* that same fraud factory while claiming the fraud factory was an innocent "victim." This is not a matter of prosecutorial discretion; it is a matter of logical and legal consistency. Evidence that the "victim" was a knowing participant in the fraud is exculpatory under *Brady* because it negates the materiality element, undermines the government's victim narrative, and provides the jury with a fundamentally different understanding of the charged conduct.

**5. DocuSign metadata and IP records are exculpatory.**

The government possesses digital evidence that further undermines its case. Every PPP application at issue was electronically signed using Eric Karnezis's unique DocuSign GUID — not Williams's. Every submission traces to Karnezis's IP address — not Williams's. Williams did not electronically sign, submit, or transmit a single PPP application. This metadata is squarely exculpatory: it establishes that Karnezis — not Williams — was the individual who actually executed and submitted the applications through the Blueacorn-Capital Plus pipeline. The government's failure to disclose these records is a *Brady* violation.

**6. This evidence directly negates an element of every charged count.**

Evidence that negates an element of the offense is the highest category of exculpatory evidence. Unlike impeachment evidence, which merely weakens the government's proof, element-negating evidence means the government *cannot prove its case*. The Blueacorn/Capital Plus evidence negates the materiality element of every wire fraud count and the underlying wire fraud for the money laundering counts. This Court should compel its immediate disclosure.

## B. Cooperator Plea Agreements and Proffer Materials Are Impeachment Evidence Under *Giglio*

The government has obtained plea agreements and cooperation from multiple individuals whose testimony could be central to Williams's trial. Under *Giglio*, the government must disclose all benefits, agreements, and understandings it has with these individuals:

**1. Bayless Cobb** — Co-defendant who pled guilty on July 10, 2025. His plea agreement explicitly names Williams as a co-conspirator. If called as a government witness, Cobb's cooperation agreement, the benefits he received (3-level downward variance, no money laundering charge), and any proffer or debriefing statements are *Giglio* material.

*Page 14-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

**2. Eric Karnezis** — Referral agent and scheme ringleader (Defendant No. 1) who pled guilty on March 25, 2025. His plea agreement details the mechanics of the Blueacorn pipeline and characterizes co-conspirators' roles. Karnezis's cooperation agreement, any statements he has made about the pipeline's operations, Capital Plus's review procedures, or the relative roles of co-conspirators, and the benefits he has received or expects to receive at his June 15, 2026 sentencing are *Giglio* material.

**3. Anthony Karnezis** — Eric's twin brother who pled guilty on March 26, 2025, to conspiracy to submit approximately 140 fraudulent PPP applications through the same pipeline. Any cooperation agreement, proffer statements, debriefing memos, and sentencing recommendations are *Giglio* material. Anthony's characterization of the pipeline's operations and his brother's role — as well as any statements regarding Williams — are directly relevant.

**4. Stephanie Hockridge** — Blueacorn co-founder convicted and sentenced to 10 years. Any statements Hockridge has made about Capital Plus's role, Blueacorn's processing procedures, or the lack of meaningful review are both *Brady* material (exculpatory as to materiality) and *Giglio* material (impeachment of the government's "victim" narrative).

**5. Nathan Reis** — Blueacorn co-founder who pled guilty in August 2025 and was sentenced to 10 years. The Karnezis plea agreement identifies Reis as a co-conspirator. Any cooperation agreement, proffer statements, or debriefing memos are *Giglio* material.

Under *Giglio* and *Napue v. Illinois*, 360 U.S. 264 (1959), the government may not present testimony from cooperating witnesses without disclosing the full scope of benefits those witnesses have received. This includes formal plea agreements, informal understandings, sentence recommendations, and any "understanding or agreement as to a future prosecution." *Giglio*, 405 U.S. at 154-55. The government's failure to disclose these materials — particularly where the cooperators' testimony would directly bear on the materiality element and the nature of the Blueacorn-Capital Plus pipeline — violates *Giglio*. *See Smith v. Cain*, 565 U.S. 73, 76 (2012) (undisclosed impeachment evidence of key witness required reversal).

## C. The Government Has Actual and Constructive Possession of This Evidence

### 1. AUSA Bateman personally prosecuted both tracks.

AUSA Meredith D.M. Bateman signed the Cobb plea agreement (ECF No. 12), signed the Karnezis plea agreement (Jan. 25, 2025), and is the lead prosecutor in Williams's case. She has *personal, actual knowledge* of every fact contained in those plea agreements — including the Blueacorn pipeline description, Capital Plus's role, Karnezis's 350 fraudulent applications, and the $60 million in fraudulently funded loans. There is no need to invoke constructive possession doctrine; AUSA Bateman *actually possesses* this information.

### 2. Under *Kyles*, the prosecution team's knowledge is imputed to the government.

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

Even setting aside AUSA Bateman's personal knowledge, the *Brady* obligation extends to evidence "known to the others acting on the government's behalf." *Kyles*, 514 U.S. at 437. The FBI and IRS agents who investigated the Blueacorn-Capital Plus cases are part of the prosecution team. Any evidence those agents gathered about Capital Plus's review procedures, Blueacorn's processing system, or the pipeline's criminal operations is constructively in the government's possession. The government "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Id.*

### 3. SBA Office of Inspector General materials are in constructive possession.

The SBA-OIG has investigated Capital Plus Financial and the PPP fraud pipeline extensively. Under *Kyles* and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999), materials in the possession of federal agencies acting on the government's behalf in the investigation or prosecution are subject to *Brady* disclosure. The government cannot compartmentalize its knowledge by pointing to bureaucratic divisions between the USAO, FBI, IRS, and SBA-OIG when the same AUSA is coordinating prosecutions across the same conspiracy.

### 4. The car ride statement confirms pre-existing knowledge.

The agents' statement to Williams during the car ride on March 21, 2023 — "they don't want you, they want Karnezis" — demonstrates that the investigation of Karnezis and the Capital Plus pipeline was already underway at the time of Williams's arrest. The government had already identified its true target — and the evidence it was gathering about that target was *Brady* material from day one of Williams's case. The government's failure to disclose this evidence for nearly three years is constitutionally inexcusable.

## D. Aggregate Materiality Under *Kyles*

Even if the Court were to conclude that any single piece of the withheld evidence is not independently sufficient to establish materiality, the *cumulative effect* of the suppressed evidence compels disclosure. *Kyles*, 514 U.S. at 436-37; *Wearry*, 577 U.S. at 394. Consider the aggregate impact:

1. **Blueacorn's review failure** — One reviewer for 1.7 million applications means Capital Plus conducted no individualized review. This negates the materiality element.

2. **Capital Plus auto-approval** — Applications were approved at industrial scale (1,300 by Eric Karnezis alone = $105 million funded; his twin brother Anthony submitted 140 more). Capital Plus was not relying on individual representations.

3. **Pipeline prosecutions** — Hockridge (10 years, $63M), Reis (10 years), Eric Karnezis (1,300 apps, $105M funded, $3M in fees), and Anthony Karnezis (140 apps, $3.9M funded) establish the pipeline was criminal at every level. The "victim" was a participant.

4. **The car ride admission** — Agents told Williams the real target was Karnezis, proving the government knew the pipeline — not Williams — was the primary threat.

*Page 16-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

5. **The Blueacorn omission in the plea offer** — Deliberate excision of the pipeline intermediary from Williams's factual basis, while including it in Cobb's and Karnezis's.

6. **The discovery waiver** — Paragraph 10 would have foreclosed *all* future Brady challenges, suggesting the government knew it had unfulfilled disclosure obligations.

7. **Cobb disparity** — 2.2x the loss, more applications, lower offense level, greater variance, no money laundering charge — same AUSA, same judge.

Taken together, this evidence does not merely "undermine confidence in the outcome" — it *obliterates* the government's theory. The government cannot prove materiality if the lender had no review process. It cannot prove Capital Plus was a "victim" if its own insider was convicted of running the fraud from the inside. It cannot claim ignorance when the same AUSA prosecuted both cases. Under *Kyles*, *Bagley*, and *Wearry*, this evidence is material as a matter of law. *See United States v. Sedaghaty*, 728 F.3d 885, 900 (9th Cir. 2013) (applying aggregate materiality analysis).

## E. The Plea Offer's Blueacorn Omission Demonstrates Deliberate Suppression

The most striking evidence of the government's suppression is hiding in plain sight: the side-by-side comparison of how AUSA Bateman described the *same factual pipeline* in different documents.

**The Cobb plea agreement** (signed by Bateman) describes the pipeline in full: applications were submitted "through **Blueacorn, a lender service provider**, to Capital Plus Financial." ECF No. 12 at 3.

**The Karnezis plea agreement** (signed by Bateman) uses identical language: applications were submitted "through **Blueacorn, a lender service provider**, to Capital Plus Financial." Karnezis Plea Agreement ¶ 7(b).

**Williams's plea offer v.4** (from Bateman's office) omits the intermediary entirely: applications were submitted "to . . . **Capital Plus Financial** (a lender participating in the PPP)." Plea Offer v.4, ¶ 7.

This is not a stylistic variation. The Blueacorn reference is *substantive* — it identifies the conduit through which applications flowed and, more importantly, it points to the entity whose lack of review procedures undermines the materiality element. Its omission from Williams's plea offer was a deliberate act of concealment by a prosecutor who included that same language in *every other plea document she signed in this conspiracy*.

The pattern extends further. The discovery waiver in paragraph 10 — which characterizes the government's "limited discovery" as "full satisfaction" of its obligations and forces Williams to waive his right to "further production of evidence or information . . . even though he may be entitled to such production" — would have permanently sealed the door on any *Brady* challenge. The government sought to have Williams waive his rights to evidence the government was actively withholding. This is not mere hardball negotiation; it is a due process violation.

*Page 17-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

This Court need not speculate about the government's intent. The documentary evidence speaks for itself: the same prosecutor described the same pipeline differently depending on whether disclosure would help or hurt the government's case against Williams. When the pipeline description was benign (in Cobb's and Karnezis's pleas, where it documented *their* conduct), Bateman included it. When disclosure would have revealed that Capital Plus was not a legitimate victim (in Williams's plea offer), Bateman excised it.

This pattern is precisely the type of *Brady* suppression that courts have condemned as undermining the fairness and integrity of the criminal justice system. *See Brady*, 373 U.S. at 87 ("Society wins not only when the guilty are convicted, but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly.").

## F. *Jencks* Act Integration (18 U.S.C. § 3500)

In addition to the constitutional mandates of *Brady* and *Giglio*, the *Jencks* Act requires the government to produce, upon motion, any "statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). This obligation extends to:

1. **Statements by Bayless Cobb** — including proffer session transcripts, debriefing memos, FBI 302 reports, and any prior testimony regarding the Blueacorn pipeline, Capital Plus review procedures, or Williams's role.

2. **Statements by Eric Karnezis** — including all debriefing materials, 302 reports, and statements regarding the pipeline's operations, Blueacorn's processing system, Capital Plus's review procedures, and any characterizations of the roles of co-conspirators.

3. **Statements by Anthony Karnezis** — including all debriefing materials, 302 reports, proffer statements, and any testimony regarding his brother Eric's operations, the VIPPP referral agent structure, and the roles of co-conspirators including Williams.

4. **Statements by Stephanie Hockridge** — including any statements made during cooperation regarding Blueacorn's application processing, Capital Plus's approval procedures, and the absence of meaningful review.

5. **Statements by Nathan Reis** — including proffer materials, cooperation statements, and any testimony regarding the Blueacorn-Capital Plus relationship.

6. **Any other government witness** who may testify about Capital Plus as a "victim," the PPP application process, or the lending pipeline.

While the *Jencks* Act technically requires production only after a witness has testified on direct examination, courts routinely order earlier disclosure when the material overlaps with *Brady*/*Giglio* obligations. Given the motions deadline of July 10, 2026 and trial date of October 27, 2026, Williams requests that the Court order production of *Jencks* material concurrently with *Brady*/*Giglio* material to permit effective trial preparation.

*Page 18-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

# V. SPECIFIC DISCOVERY DEMANDED

Williams requests the Court to order the government to produce the following categories of *Brady*, *Giglio*, and *Jencks* material:

## Category 1: Blueacorn/Capital Plus Internal Records

1. All internal review procedures, guidelines, and quality control protocols used by Capital Plus Financial for PPP loan applications received through Blueacorn, Inc.

2. Approval and denial rates for PPP applications processed through the Blueacorn-Capital Plus pipeline, including aggregate statistics and any sampling or audit data.

3. Any internal audits, compliance reviews, risk assessments, or quality assurance reports conducted by or on behalf of Capital Plus Financial regarding its PPP lending operations.

4. The identity, job title, and responsibilities of the reviewer(s) assigned to review PPP applications received from Blueacorn, including any staffing records, workload data, or productivity metrics.

5. Any communications (internal emails, memoranda, reports) between Capital Plus Financial personnel regarding the volume, quality, or review of PPP applications received through Blueacorn.

6. Any communications between Capital Plus Financial and Blueacorn, Inc. regarding application processing, review standards, approval criteria, or fraud detection.

## Category 2: Related Prosecution Materials

1. Complete plea agreements, including all attachments, addenda, and side agreements, for Bayless Cobb, Eric Karnezis, Anthony Karnezis, Stephanie Hockridge, and Nathan Reis.

2. All cooperation agreements, proffer letters, queen-for-a-day agreements, and immunity agreements entered into between the government and any cooperating witness in the Blueacorn/Capital Plus prosecutions.

3. FBI 302 reports, DEA-6 reports, and any other agent reports from debriefing sessions with Cobb, Eric Karnezis, Anthony Karnezis, Hockridge, Reis, or any other cooperating witness regarding the Blueacorn-Capital Plus pipeline, Capital Plus review procedures, or Williams's role.

4. All proffer session notes, transcripts, and recordings involving Cobb, Eric Karnezis, Anthony Karnezis, Hockridge, or Reis.

5. Grand jury testimony transcripts (if applicable) for Cobb, Eric Karnezis, Anthony Karnezis, Hockridge, and Reis, to the extent they concern the Blueacorn-Capital Plus pipeline or Capital Plus's review procedures.

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

## Category 3: Congressional and Regulatory Materials

1. All materials obtained by the government from the House Select Subcommittee on the Coronavirus Crisis regarding Blueacorn, Inc. and Capital Plus Financial, including exhibits, testimony transcripts, and staff reports.

2. SBA Office of Inspector General reports, audit findings, and investigative summaries regarding Capital Plus Financial's PPP lending operations and its relationship with Blueacorn, Inc.

3. Any regulatory actions, consent orders, sanctions, enforcement actions, or supervisory letters issued against Capital Plus Financial or Blueacorn, Inc. by any federal or state regulatory agency.

4. Communications between the SBA, FDIC, or any other regulatory body and Capital Plus Financial regarding PPP lending practices, application review standards, or fraud detection.

## Category 4: Agent Investigation Files

1. FBI and IRS case files, investigative summaries, and agent reports for the related Blueacorn/Capital Plus investigations, to the extent they contain information relevant to Capital Plus's review procedures, Blueacorn's processing system, or the pipeline's criminal operations.

2. Any agent reports, memoranda, or communications identifying systemic fraud at Blueacorn or Capital Plus Financial — including any reports prepared *before* Williams's arrest on March 21, 2023.

3. Communications between prosecution teams in the Williams case and the Blueacorn/Capital Plus cases, including any coordination memoranda, task force materials, or inter-agency briefings.

## Category 5: Impeachment Materials

1. Prior inconsistent statements by any government witness regarding Capital Plus Financial's review procedures, lending decisions, or the role of Blueacorn in the application pipeline.

2. Any benefits, considerations, promises, or inducements made to cooperating witnesses beyond those documented in formal plea agreements, including informal understandings, sentencing recommendations, or assistance with other pending matters.

## Category 6: DocuSign and Digital Submission Records

1. All DocuSign records, metadata, audit trails, and envelope data for every PPP application at issue in this case, including the unique GUID (Global Unique Identifier) associated with each electronic signature, the IP address from which each application was submitted, timestamps, and device identifiers.

*Page 20-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

2. Any analysis, report, or summary prepared by the government, FBI, IRS, or any investigative agency identifying the DocuSign credentials and IP addresses associated with the submission of the PPP applications charged in the Superseding Indictment, including any analysis distinguishing submissions by Eric Karnezis from submissions by other co-conspirators.

3. DocuSign business records, subpoena returns, or certifications obtained by the government from DocuSign, Inc. regarding the accounts, GUIDs, and submission activity of Eric Karnezis, Anthony Karnezis, or any other individual who electronically signed or submitted PPP applications at issue in this case.

## Category 7: Arrest and Transportation Records

1. All recordings (audio, video, body-worn camera), agent notes, reports (including FBI 302s), memoranda, and GPS or transport logs from Williams's arrest and post-arrest transportation on March 21, 2023, including any documentation of statements made by agents to Williams during the car ride — specifically the statement "they don't want you, they want Karnezis."

2. Any agent communications (emails, text messages, radio transmissions) on or around March 21, 2023, referencing Williams, Karnezis, Capital Plus, or the Blueacorn pipeline investigation.

## Category 8: Sentencing and Disposition Materials from Related Cases

1. All sentencing memoranda, government sentencing recommendations, 5K1.1 motions, and sentencing hearing transcripts in the cases of Hockridge, Reis, Eric Karnezis, Anthony Karnezis, and Cobb, including any government assessments of culpability, loss calculations, or victim impact statements referencing Capital Plus Financial. This demand includes the materials to be filed in connection with Eric Karnezis's sentencing currently scheduled for June 15, 2026.

2. All versions of plea offers extended to co-defendants Cobb, Eric Karnezis, Anthony Karnezis, Hockridge, and Reis, including draft versions and redline changes, to the extent they reveal the government's evolving characterization of the Blueacorn-Capital Plus pipeline and Capital Plus's status as "victim" or participant.

---

# VI. RELIEF REQUESTED

Defendant Fredrico Antoine Williams respectfully requests that this Court:

1. **Order immediate disclosure** of all *Brady* and *Giglio* material described in this motion, including all materials in the government's actual or constructive possession relating to Blueacorn, Inc., Capital Plus Financial, and the related prosecutions of Hockridge, Reis, Eric Karnezis, Anthony Karnezis, and Cobb.

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

2. **Order the government to certify** in writing, under the obligations of *Brady v. Maryland* and *Kyles v. Whitley*, that it has disclosed all exculpatory and impeachment evidence known to any member of the prosecution team, including FBI agents, IRS agents, and SBA-OIG personnel involved in the investigation.

3. **Order production of a privilege log** identifying any responsive materials withheld under any claimed privilege, with sufficient detail to permit the Court to assess the applicability of the privilege.

4. **Extend the motions deadline** (currently July 10, 2026) by sixty (60) days to allow the defense to review the produced materials and incorporate them into remaining pretrial motions, including any *Franks* motion challenging the probable cause affidavit's omission of the Blueacorn connection.

5. **Order the government to identify** all cooperating witnesses and co-defendants who may testify at trial, with full disclosure of all cooperation agreements, benefits, and inducements.

6. **Reserve the defense's right** to file supplemental motions based on the materials produced in response to this motion, including supplemental *Brady* motions, *Franks* motions, and motions challenging the sufficiency of the indictment.

7. **Schedule an evidentiary hearing** if the government disputes the materiality of the requested materials, at which the defense may present testimony and evidence regarding the significance of the Blueacorn-Capital Plus evidence.

8. **Preserve the defense's right to move for dismissal** under *Brady* if the government has destroyed, failed to preserve, or continues to withhold material exculpatory evidence.

9. **Order production of all materials identified in Section V** within fourteen (14) days of the Court's order, with the government to provide a certification of completeness upon production.

---

# VII. CONCLUSION

The government has constructed a wire fraud case that requires the jury to believe Capital Plus Financial was a legitimate victim that relied on the representations in PPP loan applications. But the government's own prosecutions prove otherwise. Capital Plus was not a careful lender deceived by false applications — it was a node in a criminal pipeline that approved virtually every application it received. Blueacorn's co-founders have each been sentenced to a decade in prison. Eric Karnezis — Defendant No. 1 in this very case — submitted 1,300 fraudulent applications totaling $178 million through the pipeline, collecting $3 million in fees; his twin brother Anthony submitted 140 more. One person reviewed 1.7 million applications.

*Page 22-Defendant's Motion to*
*Compel Disclosure of Brady and*
*Giglio Material, with Incorporated*
*Memorandum of Law*

The government possesses all of this evidence. AUSA Bateman personally signed the plea agreements that detail the pipeline's operations. She personally prosecuted the Capital Plus insider. And yet, in Williams's case, she has disclosed none of it — choosing instead to present a plea offer that erases Blueacorn from the factual record and includes a discovery waiver that would have permanently barred this challenge.

*Brady v. Maryland* was decided sixty-three years ago. Its holding is straightforward: the government must disclose evidence favorable to the accused. The evidence described in this motion does not merely favor Williams — it dismantles an element of every charged count. The government's silence demands judicial intervention.

Williams respectfully requests oral argument on this motion.

Dated: March 10, 2026

Respectfully submitted,

---

**WARREN & SUGARMAN**

*/s/ Ernest Warren, Jr.,* OSB No. 891384
838 SW 1st Avenue, Suite 200
Portland, Oregon 97204
Telephone: (503) 228-6655
Email: e.warren@ernestwarrenlaw.com

Attorney for defendant Fredrico Williams

*Page 23-Defendant's Motion to*
*Compel Disclosure of Brady and*
*Giglio Material, with Incorporated*
*Memorandum of Law*

## CERTIFICATE OF SERVICE

I Ernest Warren, Jr., hereby certify that, on March 16, 2026, I made service of **Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law** enclosed herein with the Clerk of the U.S. District Court, District of Oregon in the attached matter upon the parties listed below by notice of electronic filing using the CM/ECF PACER Electronic Filing System as follows, and filed the original with the Court on the date listed below:

**AUSA Meredith Bateman**
United States Attorney's Office
1000 SW Third Avenue, Ste. 600
Portland, OR 97204
Ph: 503-727-1000
Email: Meredith.Bateman@usdoj.gov

DATED this 16th day of March, 2026.

WARREN & SUGARMAN

**/s/ Ernest Warren, Jr.**, OSB No. 891384
838 SW 1st Avenue, Suite 200
Portland, Oregon 97204
Telephone: (503) 228-6655
Email: e.warren@ernestwarrenlaw.com

Attorney for defendant Fredrico Williams

*Page 24-Defendant's Motion to Compel Disclosure of Brady and Giglio Material, with Incorporated Memorandum of Law*