Ernest Warren, Jr.  OSB #891384
Warren & Sugarman
838 S.W. First Ave., Suite 200
Portland, OR 97204
Tel: (503) 228-6655
E-mail: e.warren@ernestwarrenlaw.com

**Attorney for Defendant Fredrico Williams**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) **Case No. 3:23-CR-00067-IM** |
| Plaintiff, | ) |
| v. | ) **DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW** |
| **FREDRICO WILLIAMS,** | ) |
| Defendant. | ) **Oral Argument Requested** |
| | ) **Fed. R. Crim. P. 12(b)(3)(C)** |

## TABLE OF CONTENTS

| Section | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| I. INTRODUCTION | 1 |
| II. FACTUAL BACKGROUND | 3 |

**Page 1-***DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

| Section | Page |
|---|---|
| A. The Sealed Indictment (March 7, 2023) | 3 |
| B. The Arrest and Transport (March 21, 2023) | 4 |
| C. The Custodial Interview (March 21, 2023, 10:46 AM - 2:03 PM) | 5 |
| D. The Rule 5 Delay | 9 |
| III. LEGAL STANDARD | 10 |
| IV. ARGUMENT | 11 |
| A. Ground One: The Entire Interview Must Be Suppressed Under *Massiah* | 11 |
| B. Ground Two: Statements Must Be Suppressed Under *Edwards* | 15 |
| C. Ground Three: Pre-Miranda Statements Must Be Suppressed Under *Seibert* | 21 |
| D. Ground Four: Statements Must Be Suppressed Under Rule 5 and *Corley* | 23 |
| E. Ground Five: The AUSA's Secret Participation Warrants Full Suppression | 26 |
| V. REQUEST FOR EVIDENTIARY HEARING | 28 |
| VI. CONCLUSION | 29 |
| CERTIFICATE OF SERVICE | 31 |

# TABLE OF AUTHORITIES

## Cases

| Case | Page(s) |
|---|---|
| *Brewer v. Williams*, 430 U.S. 387 (1977) | 12, 14 |
| *Colorado v. Connelly*, 479 U.S. 157 (1986) | 10 |
| *Corley v. United States*, 556 U.S. 303 (2009) | 23, 24, 25 |
| *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) | 24 |
| *Davis v. United States*, 512 U.S. 452 (1994) | 16, 17, 18, 19, 20 |
| *Edwards v. Arizona*, 451 U.S. 477 (1981) | 15, 16, 17, 18, 19, 20, 21 |
| *Fellers v. United States*, 540 U.S. 519 (2004) | 13, 14 |

*Page 2-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

| Case | Page(s) |
|------|---------|
| *Jackson v. Denno*, 378 U.S. 368 (1964) | 10 |
| *Kansas v. Ventris*, 556 U.S. 586 (2009) | 14 |
| *Kirby v. Illinois*, 406 U.S. 682 (1972) | 12 |
| *Mallory v. United States*, 354 U.S. 449 (1957) | 23, 25 |
| *Massiah v. United States*, 377 U.S. 201 (1964) | 11, 12, 13, 14, 15 |
| *McNabb v. United States*, 318 U.S. 332 (1943) | 23, 24, 25 |
| *Michigan v. Harvey*, 494 U.S. 344 (1990) | 14 |
| *Minnick v. Mississippi*, 498 U.S. 146 (1990) | 16 |
| *Miranda v. Arizona*, 384 U.S. 436 (1966) | 10, 21, 22 |
| *Missouri v. Seibert*, 542 U.S. 600 (2004) | 21, 22, 23 |
| *Moran v. Burbine*, 475 U.S. 412 (1986) | 22 |
| *Oregon v. Elstad*, 470 U.S. 298 (1985) | 22 |
| *Rothgery v. Gillespie County*, 554 U.S. 191 (2008) | 12 |
| *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) | 10 |
| *Smith v. Illinois*, 469 U.S. 91 (1984) | 17 |
| *United States v. Alvarez-Sanchez*, 511 U.S. 350 (1994) | 25 |
| *United States v. Charley*, 396 F.3d 1074 (9th Cir. 2005) | 22 |
| *United States v. Crawford*, 372 F.3d 1048 (9th Cir. 2004) (en banc) | 10 |
| *United States v. Garibay*, 143 F.3d 534 (9th Cir. 1998) | 18 |
| *United States v. Henley*, 984 F.2d 1040 (9th Cir. 1993) | 13 |
| *United States v. Henry*, 447 U.S. 264 (1980) | 13, 14 |
| *United States v. Hernandez*, 574 F.2d 1362 (9th Cir. 1978) | 13 |

*Page 3-DEFENDANT'S MOTION TO SUP2RESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

| Case | Page(s) |
|---|---|
| *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000) | 28 |
| *United States v. Lares-Valdez*, 939 F.2d 688 (9th Cir. 1991) | 10 |
| *United States v. Ogbuehi*, 18 F.3d 807 (9th Cir. 1994) | 18 |
| *United States v. Rodriguez*, 518 F.3d 1072 (9th Cir. 2008) | 17 |
| *United States v. Tingle*, 658 F.2d 1332 (9th Cir. 1981) | 10 |
| *United States v. Van Metre*, 150 F.3d 339 (4th Cir. 1998) | 24 |
| *United States v. Wilson*, 838 F.2d 1081 (9th Cir. 1988) | 25 |
| *Wong Sun v. United States*, 371 U.S. 471 (1963) | 15, 29 |

## Constitutional Provisions

| Provision | Page(s) |
|---|---|
| U.S. Const. amend. IV | 24 |
| U.S. Const. amend. V | 10, 15, 21, 23 |
| U.S. Const. amend. VI | 11, 12, 13, 14, 15, 26, 27 |

## Statutes and Rules

| Statute/Rule | Page(s) |
|---|---|
| 18 U.S.C. § 3501(c) | 24, 25 |
| Fed. R. Crim. P. 5(a)(1)(A) | 23, 24, 25 |
| Fed. R. Crim. P. 12(b)(3)(C) | 1, 10 |
| D. Or. LR 7-1(b) | 1 |
| D. Or. LR 10-1 | 1 |

## Other Authorities

| Authority | Page(s) |
|---|---|
| ABA Model Rule 4.2 | 27 |
| Oregon RPC 4.2 | 27 |
| DOJ Manual § 9-13.230 | 27 |

*Page 4-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

# I. INTRODUCTION

Defendant Fredrico Antoine Williams respectfully moves this Court, pursuant to Fed. R. Crim. P. 12(b)(3)(C), to suppress all statements and derivative evidence obtained during his custodial interrogation on March 21, 2023, on five independent constitutional and statutory grounds. This motion is supported by the incorporated memorandum of law, the Declaration of Counsel filed concurrently herewith, and the record in this case.

On March 7, 2023, AUSA Meredith Bateman filed a sealed indictment charging Mr. Williams. (ECF No. 1.) Fourteen days later, on March 21, 2023, six federal agents arrested Mr. Williams at his workplace in Rancho Bernardo, San Diego County, and immediately subjected him to a 4.5-hour custodial interrogation — without counsel, without informing him of the pending indictment, and with AUSA Bateman secretly listening on speakerphone. Mr. Williams had a private attorney — Attorney Pride — whom he repeatedly asked to call during the interrogation. Mr. Williams attempted to invoke his right to counsel no fewer than twelve separate times. Every attempt was deflected, delayed, or conditioned upon his surrender of evidence. At one point, agents explicitly told Mr. Williams that he could call his attorney only after he first emailed them evidence from his phone. (Tr. Lines 6614-6617.)

Before any Miranda warnings were administered, agents conducted a substantive interrogation of Mr. Williams during the car ride from the point of arrest to the interview location. Once the recorded interview began, the lead agent immediately referenced "what we were trying to talk about in the car." (Tr. Line 127.) No curative measures separated these pre-Miranda admissions from the subsequent recorded interview.

Mr. Williams was not presented to a magistrate judge until March 23, 2023 — more than 50 hours after his arrest — far exceeding the 6-hour safe harbor established by the Supreme Court in *Corley v. United States*, 556 U.S. 303 (2009). The entire interrogation was conducted during this period of unreasonable delay.

Each of these five grounds independently requires suppression:

**Ground One — Massiah:** Mr. Williams was already under sealed indictment when interrogated. The Sixth Amendment right to counsel attached at indictment and was violated by deliberate elicitation without counsel present.

**Ground Two — Edwards:** Mr. Williams invoked his right to counsel twelve times during the interview. Each invocation was deflected, and interrogation continued in violation of the bright-line rule of *Edwards v. Arizona*.

**Ground Three — Seibert:** Agents conducted a pre-Miranda interrogation in the car, then re-covered the same ground after administering Miranda warnings, employing the unconstitutional question-first technique condemned in *Missouri v. Seibert*.

**Ground Four — Rule 5/Corley:** The 50-plus-hour delay before presentment exceeded the 6-hour safe harbor by more than eight times. All statements obtained during this delay must be suppressed under the McNabb-Mallory rule as codified in 18 U.S.C. § 3501(c).

*Page 5-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

**Ground Five — Prosecutorial Participation:** AUSA Bateman — the same prosecutor who filed the sealed indictment and who knew Mr. Williams was an indicted defendant — was secretly present on speakerphone during the interrogation, heard agents cut off Mr. Williams's first attempt to invoke counsel, and took no corrective action.

The remedy is straightforward: suppression of all statements obtained during the March 21, 2023 interview, all derivative evidence, and all fruits thereof.

Mr. Williams requests an evidentiary hearing pursuant to Fed. R. Crim. P. 12(b)(3)(C).

---

# II. FACTUAL BACKGROUND

## A. The Sealed Indictment (March 7, 2023)

On March 7, 2023, a federal grand jury in the District of Oregon returned a sealed indictment charging Mr. Williams with three counts of wire fraud. (ECF No. 1.) The indictment was filed under seal on the same date. AUSA Meredith Bateman was the lead prosecutor who presented the case to the grand jury and filed the indictment.

The sealed indictment remained sealed until after Mr. Williams's arrest on March 21, 2023. At the time of his arrest and subsequent interrogation, Mr. Williams had no knowledge that he had been indicted. The government agents who conducted the interrogation made no mention of the pending indictment. Mr. Williams was not informed that formal charges had already been filed against him. Instead, he was led to believe that his cooperation would influence future charging decisions — that AUSA Bateman was the "decision-maker" who would evaluate his cooperation. (Tr. Lines 141-150.)

The PACER docket confirms the critical timeline: the sealed indictment (ECF No. 1) was filed on March 7, 2023; the arrest warrant was not formally executed until March 22, 2023 (ECF No. 73); the Rule 5 initial appearance did not occur until March 23, 2023 (ECF No. 6).

## B. The Arrest and Transport (March 21, 2023)

On the morning of March 21, 2023, at approximately 9:30 AM, six federal agents from four agencies arrested Mr. Williams at his place of employment, General Atomics, in Rancho Bernardo, San Diego County, California. The arresting agencies included SBA Office of Inspector General (OIG), Naval Criminal Investigative Service (NCIS), IRS Criminal Investigation Division (IRS-CI), and the California Attorney General's Office.

At the time of his arrest, Mr. Williams had a private attorney, Attorney Pride, whom he had previously retained. Mr. Williams was not informed that he had been indicted, and no CJA counsel had been appointed. Throughout the subsequent interrogation, Mr. Williams's repeated requests to "call my attorney" referred specifically to Attorney Pride.

Following the arrest, agents transported Mr. Williams by car to an interview location. During this transport, before any Miranda warnings were administered, agents engaged Mr. Williams in substantive conversation about the investigation. The content of this pre-Miranda car conversation is confirmed by the subsequent recorded interview, in which lead agent SA Kristopher Pasquale (SBA-OIG) stated:

> "At the end of the day, like, **what we were trying to talk about in the car** and help you understand . . ."

(Tr. Line 127.)

And later:

> "**Like I told you in the car**, he loves numbers."

(Tr. Line 460.)

These statements establish that agents discussed the substance of the investigation with Mr. Williams during the car ride — before Miranda warnings and before the recorded interview began. No recording of the car conversation has been produced in discovery. No agent notes documenting the car conversation have been disclosed.

The arrest warrant, though issued under the sealed indictment, was not formally executed and returned until March 22, 2023 — the day after the arrest and interrogation. (ECF No. 73.)

## C. The Custodial Interview (March 21, 2023, 10:46 AM - 2:03 PM)

### 1. The Setting and Personnel

The recorded interview began at approximately 10:46 AM and concluded at approximately 2:03 PM — a duration of approximately 4 hours and 17 minutes. Six federal agents were present:

| Agent | Agency | Role |
| --- | --- | --- |
| SA Kristopher Pasquale | SBA-OIG | Lead interviewer |
| SA Andrew Hamilton Smith | CA Attorney General | Interviewer |
| SA Brian Bertnik | NCIS | Financial records |
| SA Alice Murphy | NCIS | Present for portions |
| SA Brandy Lacey | IRS-CI | Financial investigation |
| SA John Pelley | IRS-CI | Processing/marshal |

Additionally, AUSA Meredith Bateman was connected to the interview room via speakerphone from the outset. Her presence was concealed from Mr. Williams. (See Section II.C.4 below.)

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

### 2. Miranda Advisement and Interrupted Waiver

At the beginning of the recorded interview, SA Pasquale administered Miranda warnings to Mr. Williams. Mr. Williams stated he understood his rights. When asked whether he had "any issue with talking to us," Mr. Williams began to qualify his response:

> **AGENT:** "So you don't have any issue with talking to us; right?"
>
> **MR. WILLIAMS:** "No, I don't have an issue, **but I would like to —**"
>
> **MR. PASQUALE:** [Interrupting] "At the end of the day, like, what we were trying to talk about in the car and help you understand . . ."

(Tr. Lines 124-127.)

Mr. Williams was not permitted to complete his sentence. SA Pasquale immediately launched into a lengthy monologue about cooperation, invoking AUSA Bateman by first name as "Meredith" and describing her as "the decision-maker." (Tr. Lines 141-150.) At this point, AUSA Bateman was on the speakerphone and unmuted — she heard Mr. Williams attempt to qualify his waiver and heard the agents cut him off.

The Miranda "waiver" was obtained while agents were simultaneously making cooperation promises and before Mr. Williams could articulate his reservation. Under these circumstances, the waiver was not "voluntary, knowing, and intelligent" as required by *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

### 3. Twelve Invocations of the Right to Counsel

Over the course of the 4.5-hour interrogation, Mr. Williams attempted to invoke his right to counsel twelve separate times. Each invocation was met with deflection, delay, topic-switching, or — in the most egregious instance — an explicit demand that Mr. Williams first surrender evidence before being permitted to call his attorney:

| # | Transcript Line | Williams's Statement | Agent Response |
|---|---|---|---|
| 1 | Lines 124-125 | "I don't have an issue, but I would like to —" | Cut off mid-sentence by Pasquale; cooperation monologue |
| 2 | Lines 2651-2654 | "because I forget who it was earlier, but I was asking, when do I get to —" | Pasquale redirected to "Bayless and Eric" |
| 3 | Lines 2726-2727 | **"I would prefer to do that with my attorney."** | "Can we talk about Eric and Bayless? Can we move on to that piece?" |
| 4 | Line 4305 | "I would want to ask my attorney, if that's okay." | Pressed forward on narrower evidence scope |
| 5 | Lines 4548-4549 | | |

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

| # | Transcript Line | Williams's Statement | Agent Response |
|---|---|---|---|
| | | "Do you know if at some point I get to call my attorney, or is that something later?" | "We just kind of want to get through this high-level stuff." |
| 6 | Lines 4611-4614 | "if my attorney was to say, 'You can give him this,' I would feel more comfortable" | Redirected to narrower evidence request |
| 7 | Lines 5234-5235 | "That I will leave for when the attorney comes in." | Lacey pivoted to seizure warrant discussion |
| 8 | Line 6075 | "Can I call my attorney?" | "Yeah. We will absolutely give you a minute; right? I just want to describe the process for you real quick." (Continued for ~70 more lines.) |
| 9 | Lines 6245-6246 | "Do you mind if I call the attorney real quick?" | Deflected with discussion of consent form language |
| 10 | Line 6330 | "Can I call my attorney from —" | "You absolutely can." Then Smith: "Pull up the next conversation that's pertinent." Phone examination continued. |
| 11 | **Lines 6614-6617** | "Can I call my attorney? Because it's on this —" | **"Can you send this to us first? This is just kind of, like, a critical piece. Can you e-mail that to Drew first and then call?"** |
| 12 | Lines 6674-6676 | "Can I just call my attorney real quick?" | Finally permitted. Recording terminated. Smith: "We don't want you calling your attorney in front of us." |

Invocation #3 (Line 2727) is the clearest *Edwards* invocation: "I would prefer to do that with my attorney." This is an unambiguous, unequivocal request for counsel. Under *Edwards*, all questioning should have ceased at this point. Instead, the agents immediately changed the subject and continued interrogating Mr. Williams for approximately 4,000 additional lines of transcript — nearly three more hours.

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

Invocation #11 (Lines 6614-6617) is the most constitutionally egregious: agents explicitly conditioned Mr. Williams's access to Attorney Pride on first surrendering evidence from his phone. The "critical piece" the agents demanded was a spreadsheet that a co-defendant had accidentally sent to Mr. Williams. The agents told Mr. Williams he could call his lawyer only after he emailed them this spreadsheet. The agents subsequently seized Mr. Williams's phone. This is coercion per se — conditioning the exercise of a constitutional right on the surrender of evidence.

**4. AUSA Bateman's Secret Presence on Speakerphone**

AUSA Meredith Bateman was connected to the interview via speakerphone from the beginning of the recorded interview. She is identified in the transcript only as "UNIDENTIFIED SPEAKER" — her identity was never disclosed to Mr. Williams during the interrogation.

**Bateman is named as "the decision-maker":**

> **PASQUALE:** "I can go to Meredith and Drew can go to Meredith and we can say, 'Rico was totally transparent. He played ball.' . . . And we can tell her that, and she can look at that. And, like I said, we're not the decision-makers. She is."

(Tr. Lines 141-150.)

**First direct exchange with Bateman:**

> **UNIDENTIFIED SPEAKER:** "Hey."
>
> **PASQUALE:** "Do you want me to put you on mute, or do you want me to have that available in case you need to jump in, or just put you on mute?"
>
> **UNIDENTIFIED SPEAKER:** "No. Just put me on mute."

(Tr. Lines 208-214.)

**Mute fumble confirming her identity:**

> **SMITH:** "You muted yourself, not Meredith. She has to mute."
>
> **PASQUALE:** "I muted the wrong person, Meredith. Sorry. You have to mute yourself, Meredith."
>
> **SMITH:** "God dang it."
>
> **UNIDENTIFIED SPEAKER:** "I am going on mute."

(Tr. Lines 249-259.)

Critically, Bateman was unmuted and on the speakerphone at the time of Invocation #1 (Lines 124-125). The mute exchange does not occur until Lines 208-259. AUSA Bateman therefore heard agents cut off Mr. Williams's first attempt to invoke his right to counsel — and she took no corrective action.

*Page 10-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

After going on mute at Line 259, there is no evidence in the transcript that Bateman disconnected from the call. The recording continues for approximately 6,476 additional lines — over four more hours of interrogation — with no reference to Bateman hanging up or being disconnected.

The agents actively concealed Bateman's presence from Mr. Williams:

1. Bateman is labeled "UNIDENTIFIED SPEAKER" in the transcript — never identified to Mr. Williams as the prosecutor.
2. Pasquale presented "Meredith" as someone they would "go to" after the interview — not as someone already listening.
3. The agents attempted to mute her so her presence would not be detected.
4. Smith's exasperation ("God dang it") when the mute failed indicates they wanted her presence hidden.
5. At no point was Mr. Williams informed: "The prosecutor is listening to this interview."

### 5. Coercive Interrogation Tactics

The agents employed a coordinated pattern of coercive interrogation techniques throughout the 4.5-hour interview:

- **Pre-Miranda framing:** Substantive discussion in the car before warnings.
- **Military identity exploitation:** Agents built rapport by referencing Mr. Williams's Marine Corps service, exploiting his military conditioning to follow authority.
- **"Now or never" false urgency:** "This is that opportunity"; "won't have a future opportunity." (Tr. Lines 141-150.)
- **Minimization:** "We're not judging you"; "We know you're not the head of the scheme."
- **"Trust tests":** SA Pasquale explicitly framed early admissions as "trust tests" (Tr. Line 1045), weaponizing Mr. Williams's honesty to extract progressively more damaging statements.
- **False cooperation promises:** Agents promised that cooperation would influence charging decisions, while AUSA Bateman — the actual "decision-maker" — was already listening on the phone and had already filed the indictment.
- **Conditioning attorney access on evidence production:** At Invocation #11, agents told Mr. Williams he must surrender evidence before calling his lawyer. (Tr. Lines 6614-6617.)

Each of these tactics bears directly on the voluntariness analysis under *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The totality of the circumstances — a 4.5-hour interrogation by six agents, the exploitation of military conditioning, false cooperation promises, concealed prosecutorial participation, and the systematic denial of twelve attorney requests — establishes that Mr. Williams's statements were not the product of a free and unconstrained choice.

## D. The Rule 5 Delay

The timeline from arrest to first judicial appearance is as follows:

*Page 11-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

| Event | Date/Time | Source |
|---|---|---|
| Arrest | March 21, 2023, ~9:30 AM | Arrest report |
| Recorded interview begins | March 21, 2023, 10:46 AM | Transcript |
| Recorded interview ends | March 21, 2023, ~2:03 PM | Transcript |
| Held in San Diego County jail overnight | March 21-22, 2023 | Not booked until morning |
| Booked into jail / Arrest warrant executed | March 22, 2023 | ECF No. 73 |
| Rule 5 initial appearance (S.D. Cal.) | March 23, 2023 | ECF No. 6 |
| Arraignment (D. Or., by video) | April 26, 2023 | ECF No. 7 |

Mr. Williams was arrested on March 21, 2023 at approximately 9:30 AM. After the 4.5-hour interrogation, he was transported to the San Diego County jail, where he was held overnight without being booked. He was not booked into the jail until the following morning, March 22, 2023. He was not presented to a magistrate judge until March 23, 2023 — a delay exceeding 50 hours. The entire 4.5-hour interrogation was conducted during this period of unreasonable delay, and the government's failure to even book Mr. Williams on the night of his arrest underscores that presentment was not a priority.

There was no physical barrier to prompt presentment. A United States Magistrate Judge was available in the Southern District of California. The agents had Mr. Williams in custody, in a room, with a court reporter. They chose to interrogate rather than present. The government cannot claim that the delay was necessary for transportation to the charging district (Oregon), because Fed. R. Crim. P. 5(a)(1)(A) requires presentment before "the nearest available" magistrate judge — which in San Diego was the S.D. California Magistrate Judge.

# III. LEGAL STANDARD

Pretrial motions to suppress statements are governed by Fed. R. Crim. P. 12(b)(3)(C). When a defendant moves to suppress statements obtained during custodial interrogation, the government bears the burden of proving by a preponderance of the evidence that the statements were lawfully obtained. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *United States v. Crawford*, 372 F.3d 1048, 1055 (9th Cir. 2004) (en banc). This burden rests on the government at all times — the defendant need not make an initial showing that the Constitution was violated, because it is the government that must affirmatively demonstrate the constitutionality of its conduct. *See Miranda v. Arizona*, 384 U.S. 436, 475 (1966) ("[T]he prosecution may not use

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.").

For statements obtained during custodial interrogation, the government must prove that Miranda warnings were properly given and that any waiver of rights was "voluntary, knowing, and intelligent." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The voluntariness inquiry requires examination of "the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

The Ninth Circuit has held that the government's burden is particularly heavy when the evidence shows "a lengthy period of questioning, the defendant's lack of access to counsel, and coercive police conduct." *United States v. Tingle*, 658 F.2d 1332, 1336 (9th Cir. 1981). When statements are obtained in violation of the Sixth Amendment right to counsel, the analysis is distinct from — and cumulative to — the Fifth Amendment Miranda framework. *Jackson v. Denno*, 378 U.S. 368 (1964).

Where the defendant raises factual disputes concerning the circumstances of the interrogation, the court should hold an evidentiary hearing. *United States v. Lares-Valdez*, 939 F.2d 688, 690 (9th Cir. 1991).

---

# IV. ARGUMENT

## A. Ground One: The Entire Interview Must Be Suppressed Under the Sixth Amendment — *Massiah v. United States*

### 1. The Right to Counsel Attached at Indictment

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right "attaches at the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v. Gillespie County*, 554 U.S. 191, 198 (2008) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).

A sealed indictment triggers the Sixth Amendment right to counsel. As the Supreme Court held in *Kirby*, the right attaches once "the government has committed itself to prosecute" through "the filing of formal charges." 406 U.S. at 689. A sealed indictment is a formal charge — it represents the grand jury's determination that probable cause exists and the government's commitment to prosecute. The fact that the indictment is sealed does not delay the attachment of the right; it merely delays the defendant's knowledge of it.

Here, the grand jury returned the sealed indictment on March 7, 2023. (ECF No. 1.) Mr. Williams's Sixth Amendment right to counsel attached on that date — fourteen days before his arrest and interrogation on March 21, 2023. At the time of the interrogation, Mr. Williams was an indicted defendant.

*Page 13-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

**2. The Government Deliberately Elicited Statements Without Counsel**

In *Massiah v. United States*, 377 U.S. 201 (1964), the Supreme Court held that "any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the [Sixth Amendment] right to counsel." *Id.* at 206 (quoting the trial court). The test is whether the government "deliberately elicited" incriminating statements from the defendant after the right to counsel attached. *Id.* at 206; *United States v. Henry*, 447 U.S. 264, 270 (1980).

The facts here present a *Massiah* violation far more egregious than the original case. In *Massiah*, the government used a cooperating co-defendant to secretly record the defendant. Here, the government:

- Knew Mr. Williams was under indictment (AUSA Bateman filed the indictment herself on March 7, 2023);
- Arrested Mr. Williams and brought him to an interrogation room;
- Deployed six federal agents to conduct a 4.5-hour interrogation;
- Connected AUSA Bateman — the very prosecutor who filed the indictment — to the interrogation via speakerphone;
- Never informed Mr. Williams that he had been indicted;
- Never informed Mr. Williams that the prosecutor was listening;
- Presented cooperation as an opportunity to influence future charging decisions that had, in fact, already been made; and
- Continued interrogating for hours despite twelve attempts by Mr. Williams to invoke his right to counsel.

This is not a close case. This is not passive listening or indirect elicitation. This is the direct, deliberate interrogation of an indicted defendant by six law enforcement officers, with the prosecuting AUSA on the phone, without counsel present or even appointed.

The Ninth Circuit has consistently applied *Massiah* to suppress statements deliberately elicited from indicted defendants. *United States v. Hernandez*, 574 F.2d 1362, 1368-69 (9th Cir. 1978) (suppressing statements obtained from indicted defendant); *United States v. Henley*, 984 F.2d 1040, 1044 (9th Cir. 1993) (Massiah violated where government agents "deliberately elicited" statements post-indictment).

In *Fellers v. United States*, 540 U.S. 519 (2004), the Supreme Court held that the Sixth Amendment is violated whenever law enforcement officers "deliberately elicit" information from an indicted defendant without counsel — even where the officers merely discuss the charges at the defendant's home without formal interrogation. *Id.* at 524-25. Here, the government did far more than "discuss" — it conducted a full custodial interrogation.

**3. AUSA Bateman's Knowledge and Participation Confirm Deliberate Elicitation**

The *Massiah* analysis is strengthened by the fact that AUSA Bateman — the lead prosecutor — was personally connected to the interrogation by speakerphone. Bateman filed the sealed indictment on March 7, 2023. She knew, beyond any doubt, that Mr. Williams was an indicted defendant at the time of the March 21

*Page 14-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

interview. Her presence on the call was not happenstance; she was identified as "the decision-maker" (Tr. Lines 141-150) and spoke on the line before being muted (Tr. Lines 208-259).

The government cannot claim ignorance of Mr. Williams's indicted status. The very AUSA who obtained the indictment participated in the interrogation. This eliminates any possible defense of good-faith mistake or lack of knowledge. *See Brewer v. Williams*, 430 U.S. 387, 400 (1977) (Sixth Amendment violation where police "deliberately and designedly set out to elicit information" from indicted defendant).

### 4. The Remedy Is Suppression of All Statements

Under *Massiah*, the remedy for deliberate elicitation of statements from an indicted defendant without counsel is suppression of all statements in the government's case-in-chief. *Kansas v. Ventris*, 556 U.S. 586, 593-94 (2009) (statements obtained in violation of *Massiah* are inadmissible in the prosecution's case-in-chief but may be used for impeachment).

Critically, the *Massiah* remedy is broader than an *Edwards* remedy. Under *Edwards*, suppression typically begins at the point of invocation. Under *Massiah*, **all statements are suppressible from the moment the Sixth Amendment attached** — which was the moment of indictment on March 7, 2023. Because Mr. Williams was already indicted when the interview began, the entire interview — from the first word to the last — was obtained in violation of the Sixth Amendment.

This distinction is dispositive. Even if this Court were to find that some of Mr. Williams's attorney invocations were ambiguous (they were not), the *Massiah* analysis requires suppression of the entire interview regardless of when any particular invocation occurred.

---

## B. Ground Two: All Statements After the First Invocation Must Be Suppressed Under *Edwards v. Arizona*

### 1. The Edwards Bright-Line Rule

In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Supreme Court established a bright-line rule: once a suspect in custody has "expressed his desire to deal with the police only through counsel," the suspect "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85. This rule is "designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights." *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

The *Edwards* rule applies whether the underlying right invoked is the Fifth Amendment right to counsel (Miranda-based) or the Sixth Amendment right to counsel (Massiah-based). *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990). Where, as here, both rights are implicated, the protections are cumulative.

*Page 15-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

### 2. Mr. Williams Invoked His Right to Counsel Twelve Times

As documented in Section II.C.3 above, Mr. Williams attempted to invoke his right to counsel twelve separate times during the interview. The agents deflected, redirected, delayed, or ignored every invocation.

**The clearest invocation occurred at Line 2727:** "I would prefer to do that with my attorney." Mr. Williams was referring to Attorney Pride, a private attorney he had previously retained.

This statement is unambiguous. It is not a question. It is not equivocal. It is a clear, affirmative expression of Mr. Williams's desire to have his identified, existing counsel present. Under *Smith v. Illinois*, 469 U.S. 91, 98 (1984) (per curiam), "an accused's postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." Once this invocation occurred, all questioning was required to cease.

The agents did not cease questioning. Instead, they immediately changed the subject: "Can we talk about Eric and Bayless? Can we move on to that piece?" (Tr. Line 2728.) The interrogation continued for approximately four more hours and four thousand additional lines of transcript.

### 3. Even Arguably Ambiguous Invocations Required Clarification

Under *Davis v. United States*, 512 U.S. 452 (1994), if a suspect's reference to counsel is ambiguous or equivocal — "such that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel" — the officers are not required to cease questioning but should make "clarifying questions" before continuing the interrogation. *Id.* at 461-62.

The Ninth Circuit has applied *Davis* to hold that officers who receive even an ambiguous request for counsel must clarify the defendant's intent rather than simply ignoring the request and continuing interrogation. *United States v. Rodriguez*, 518 F.3d 1072, 1079 (9th Cir. 2008); *United States v. Ogbuehi*, 18 F.3d 807, 813 (9th Cir. 1994).

Here, even if this Court were to find that some of the twelve invocations were ambiguous (which Defendant contests), the agents never made any attempt to clarify. Mr. Williams was not requesting appointment of unknown counsel — he was asking to call a specific, named attorney he had already retained. The existence of an identified attorney makes these invocations even less susceptible to the "ambiguity" defense under *Davis*. Instead, the agents employed a consistent pattern of immediate topic-switching — redirecting Mr. Williams to a new area of questioning each time he raised the subject of an attorney. This pattern demonstrates not ambiguity on Mr. Williams's part, but a deliberate strategy by the agents to prevent him from completing his invocations.

Invocation #1 (Line 124) is particularly significant: Mr. Williams was literally cut off mid-sentence. He said, "I don't have an issue, but I would like to —" and SA Pasquale immediately interrupted. Mr. Williams was never permitted to finish his thought. Under the Ninth Circuit's approach, "when a suspect makes an ambiguous

*Page 16-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

or equivocal reference to counsel, questioning may continue, but only to clarify whether the suspect is invoking the right to counsel." *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998). Here, the agents did not clarify — they steamrolled.

### 4. The Pattern of Twelve Invocations Establishes Systematic Denial

Viewed in totality, the twelve invocations over 4.5 hours reveal a deliberate government strategy to extract maximum admissions before counsel could intervene:

- **Hours 1-2 (Invocations 1-3):** Mr. Williams's early attempts to invoke counsel were cut off or redirected. The agents established a pattern of deflection from the outset.

- **Hours 2-3 (Invocations 4-7):** Mr. Williams became more direct in his requests, but agents consistently responded with "we just kind of want to get through this" or pivoted to new evidence topics.

- **Hours 3-4 (Invocations 8-12):** Mr. Williams escalated to direct requests ("Can I call my attorney?"), which agents acknowledged ("You absolutely can") but then continued questioning. At Invocation #11, agents explicitly conditioned attorney access on evidence surrender.

No court has held that an interrogation may lawfully continue through twelve separate attorney invocations. The cumulative weight of these invocations — each deflected, each unanswered — eliminates any argument that Mr. Williams's desire for counsel was ambiguous.

### 5. Invocation #11 Constitutes Coercion Per Se

At Lines 6614-6617, the following exchange occurred:

> **MR. WILLIAMS:** "Can I call my attorney? Because it's on this —"
>
> **AGENT:** "Can you send this to us first? This is just kind of, like, a critical piece. Can you e-mail that to Drew first and then call?"

The agents explicitly conditioned Mr. Williams's access to Attorney Pride upon the prior surrender of evidence from his phone — specifically, a spreadsheet that a co-defendant had accidentally sent to Mr. Williams. This is not a mere deflection — it is the affirmative obstruction of the right to counsel. The government made attorney access contingent upon the defendant's cooperation with the government's evidence-gathering objectives. The agents subsequently seized Mr. Williams's phone.

No court has ever sanctioned conditioning a suspect's right to counsel on evidence production. This demand is coercive per se, and any statements or evidence obtained after this point are independently suppressible regardless of the other *Edwards* violations.

### 6. The Government Cannot Establish Reinitiation

The government bears the burden of proving that Mr. Williams "initiated" further communication after invoking counsel. *Edwards*, 451 U.S. at 484-85. The government cannot meet this burden. The record shows that every time Mr. Williams

*Page 17-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

invoked his right to counsel, the agents — not Mr. Williams — initiated the next round of questioning by changing the subject and posing new questions. Mr. Williams responded to questions asked of him, as anyone in his position would. Responding to continued questioning does not constitute initiation. *Smith v. Illinois*, 469 U.S. at 98.

---

## C. Ground Three: Pre-Miranda Statements Must Be Suppressed Under *Missouri v. Seibert*

### 1. The Question-First Technique

In *Missouri v. Seibert*, 542 U.S. 600 (2004), the Supreme Court held that the practice of interrogating a suspect without Miranda warnings, obtaining admissions, and then administering Miranda warnings and covering the same ground, renders the midstream warnings ineffective. The plurality held that "the question-first tactic effectively threatens to thwart *Miranda*'s purpose of reducing the risk that a coerced confession would be admitted." *Id.* at 617. The key inquiry is whether "the facts here do not reasonably support a conclusion that the warnings given could have served their purpose." *Id.* at 611-12.

Justice Kennedy's concurrence, which controls in the Ninth Circuit as the narrowest ground, held that midstream warnings are ineffective when the question-first technique was used "in a calculated way to undermine the Miranda warning." *Id.* at 622 (Kennedy, J., concurring). The Ninth Circuit has adopted Justice Kennedy's test. *United States v. Charley*, 396 F.3d 1074, 1081 (9th Cir. 2005).

### 2. The Evidence Establishes Deliberate Question-First Interrogation

The agents questioned Mr. Williams in the car before administering Miranda warnings. When the recorded interview began, SA Pasquale immediately referenced the car conversation:

> "At the end of the day, like, **what we were trying to talk about in the car** and help you understand . . ."

(Tr. Line 127.)

And later in the interview:

> "**Like I told you in the car**, he loves numbers."

(Tr. Line 460.)

These references establish three critical facts:

**First**, the agents conducted a substantive pre-Miranda interrogation in the car. The phrase "what we were trying to talk about in the car" confirms that agents raised case-related topics before warnings were given.

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

**Second**, the agents deliberately used the car conversation as a foundation for the recorded interview. SA Pasquale's immediate reference to the car conversation at the outset of the recorded interview demonstrates that the pre-Miranda questioning was not a casual exchange — it was the opening phase of a coordinated interrogation strategy.

**Third**, the recorded interview was a continuation of the car interrogation. The same agent who spoke to Mr. Williams in the car (Pasquale) referenced those conversations during the recorded interview, demonstrating continuity of purpose. The reference to "he loves numbers" (Tr. Line 460) shows specific substantive content was discussed in the car — not just general pleasantries.

### 3. No Curative Measures Were Employed

Under *Seibert*, midstream Miranda warnings are ineffective unless accompanied by "curative measures" that make it clear to the suspect that the pre-warning statements cannot be used. *Id.* at 612 (plurality). The factors include "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second [round], the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* at 615.

Here, every *Seibert* factor weighs in favor of suppression:

- **Overlapping content:** The same topics discussed in the car were covered in the recorded interview.
- **Continuity of personnel:** The same agents who questioned Mr. Williams in the car conducted the recorded interview.
- **Timing and setting:** The car conversation transitioned directly into the recorded interview at the interview location.
- **No curative measures:** No agent told Mr. Williams that the car conversation could not be used against him or that the Miranda warnings created a fresh start.
- **Continuity treatment:** SA Pasquale explicitly treated the recorded interview as a continuation of the car conversation ("what we were trying to talk about in the car").

Under both the plurality's totality approach and Justice Kennedy's deliberate-circumvention test, the pre-Miranda car conversation and the subsequent "warned" statements must be suppressed.

At minimum, any statements referencing topics first raised in the car must be suppressed as fruits of the pre-Miranda interrogation. More broadly, because the Miranda warnings were rendered ineffective by the question-first technique, all statements following the tainted warnings are suppressible.

### 4. The Remedy Under Seibert

Under *Seibert*, when the question-first technique is employed deliberately, the remedy is suppression of both the pre-Miranda statements and the post-Miranda statements that covered the same ground. Because the agents here used the car conversation as the foundation for the entire recorded interview — and because no

*Page 19-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

curative measures were employed — all statements from the March 21, 2023 interview are suppressible under *Seibert*. This remedy operates independently of, and cumulatively with, the suppression required under *Massiah* and *Edwards*.

---

## D. Ground Four: Statements Obtained During Unreasonable Delay Must Be Suppressed Under Rule 5 and *Corley v. United States*

### 1. The McNabb-Mallory Rule and Its Codification

Federal Rule of Criminal Procedure 5(a)(1)(A) requires that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." This requirement reflects the "prompt presentment" principle established in *McNabb v. United States*, 318 U.S. 332 (1943), and *Mallory v. United States*, 354 U.S. 449 (1957). Under the McNabb-Mallory rule, confessions obtained during a period of "unnecessary delay" between arrest and presentment are inadmissible in federal court.

Congress codified and modified this rule in 18 U.S.C. § 3501(c), which provides that a confession "shall not be inadmissible solely because of delay in bringing such person before a magistrate judge" if it is made "within six hours immediately following his arrest." The Supreme Court interpreted this provision in *Corley v. United States*, 556 U.S. 303 (2009), holding that Section 3501(c) "establish[es] a safe harbor for confessions made within six hours of arrest" but that "a confession made outside the six-hour window may still be suppressed under the McNabb-Mallory rule." *Id.* at 322. Both conditions must be satisfied — the safe harbor is a conjunctive test. *Corley*, 556 U.S. at 322. Even if the statements were made within six hours of arrest, they are not shielded if the delay in presentment was itself unnecessary.

In other words, *Corley* establishes a two-part framework: (1) confessions made within six hours of arrest are presumptively admissible (subject to voluntariness); (2) confessions made outside the six-hour window are subject to suppression if obtained during "unnecessary delay."

### 2. The 50-Hour Delay Far Exceeds the Safe Harbor

Mr. Williams was arrested on March 21, 2023 at approximately 9:30 AM. He was not presented before a magistrate judge until March 23, 2023. The delay between arrest and presentment exceeded 50 hours — more than eight times the 6-hour safe harbor.

The interrogation itself began at 10:46 AM on March 21 — approximately 76 minutes after arrest — and concluded at approximately 2:03 PM. The statements were therefore made between approximately 1.25 and 4.5 hours after arrest, which falls within the 6-hour window. However, the statements were obtained during a period of unnecessary delay that ultimately extended to 50+ hours. Under *Corley*, the safe harbor applies only where the confession was "voluntarily made" within the six-hour window and where the delay was not itself "unnecessary." *Id.* at 322.

Here, the delay was unnecessary. A United States Magistrate Judge was available in the Southern District of California, where Mr. Williams was arrested and interrogated. There was no impediment to presentment. The government chose to

*Page 20-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

interrogate first and present later — precisely the abuse the prompt presentment requirement was designed to prevent. After the interrogation concluded, agents transported Mr. Williams to the San Diego County jail but did not even book him that evening. He was held overnight without being processed and was not booked until the following morning, March 22, 2023. This failure to book Mr. Williams on the night of his arrest — despite having completed the interrogation hours earlier — further demonstrates that presentment was not a government priority.

The Supreme Court in *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), held that a delay exceeding 48 hours is presumptively unreasonable under the Fourth Amendment. The 50-hour delay here exceeds even this generous outer limit.

### 3. The Interrogation Was Conducted During and Because of the Delay

The purpose of Rule 5 is to ensure that arrestees are brought promptly before a neutral magistrate who can inform them of their rights, set conditions of release, and appoint counsel. The agents deliberately chose to interrogate Mr. Williams rather than present him. The 4.5-hour interrogation was itself the cause of delay.

The Fourth Circuit has held that where "the delay was for the purpose of interrogation," suppression is appropriate even where the statements were made within six hours of arrest. *United States v. Van Metre*, 150 F.3d 339, 347 (4th Cir. 1998). The Ninth Circuit has similarly held that "evidence of a deliberate choice to delay presentment for the purpose of continued interrogation supports suppression." *United States v. Wilson*, 838 F.2d 1081, 1085 (9th Cir. 1988).

Here, the government had no logistical reason for the 50-hour delay. Mr. Williams was arrested in San Diego County, where a federal magistrate was available. The arrest warrant had been issued by the District of Oregon, but Rule 5(a)(1)(A) requires presentment before "the nearest available" magistrate judge — not the issuing court's magistrate. The agents chose to spend the first 4.5 hours interrogating Mr. Williams, then held him for an additional 45+ hours before presenting him to a magistrate. This delay was unnecessary by any measure.

### 4. The Delay Supports Suppression Under 18 U.S.C. § 3501(c)

Even if this Court finds that the statements fall within the 6-hour safe harbor, the broader delay demonstrates that the interview was part of a deliberate strategy to extract maximum information before counsel could be appointed. When the arrestee's Rule 5 appearance is delayed by more than 50 hours and the interrogation is conducted at the front end of that delay, the "safe harbor" does not insulate the government from the broader McNabb-Mallory rule. *Corley*, 556 U.S. at 320 ("We hold that § 3501 modified McNabb-Mallory without supplanting it.").

The government cannot simultaneously maintain that the statements were made during a timely presentment process (safe harbor) and that a 50-hour delay before presentment was reasonable. The delay itself demonstrates that the agents' priority was interrogation, not presentment.

---

*Page 21-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

## E. Ground Five: The AUSA's Secret Presence Constitutes Prosecutorial Participation in Constitutional Violations

### 1. The Significance of Prosecutorial Participation

While the first four grounds independently require suppression, the AUSA's participation in the interrogation constitutes an aggravating factor that goes to the appropriate remedy. As detailed in Section II.C.4, AUSA Meredith Bateman:

1. Filed the sealed indictment against Mr. Williams on March 7, 2023 — and therefore knew he was an indicted defendant;

2. Was connected to the interrogation room via speakerphone from the outset;

3. Was unmuted during the critical early minutes of the interview, including when agents cut off Mr. Williams's first attempt to invoke his right to counsel (Invocation #1, Line 124);

4. Was presented to Mr. Williams not as the prosecutor already handling his case, but as a distant "decision-maker" whose favor could be earned through cooperation — when in fact charges had already been filed;

5. Was the AUSA who would later use the statements obtained in this interview to prosecute Mr. Williams at trial;

6. Heard agents deflect Mr. Williams's attempt to invoke counsel and took no corrective action; and

7. Was never identified to Mr. Williams as the prosecutor.

### 2. Prosecutorial Duty to Prevent Constitutional Violations

Under DOJ guidelines, prosecutors have an obligation not to participate in or condone constitutional violations during interrogations. *See* DOJ Manual § 9-13.230 (governing participation in witness interviews). Under Oregon RPC 4.2 and ABA Model Rule 4.2, prosecutors are prohibited from communicating with represented persons about the subject of the representation without counsel's consent. While counsel had not yet been appointed at the time of the March 21 interview, the *Massiah* right to counsel had already attached by virtue of the indictment.

AUSA Bateman's presence during the interrogation of an indicted defendant without counsel present — an interrogation she knew was being conducted in violation of *Massiah* — constitutes prosecutorial ratification of the constitutional violations. Whether Bateman remained on the line throughout or disconnected after going on mute, she was present during the critical early phase of the interview when the foundational constitutional violations occurred, including the interrupted first invocation of counsel.

*Page 22-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

### 3. The Remedy — Full Suppression

Where prosecutorial misconduct aggravates underlying constitutional violations, courts have imposed broader remedial measures. The government's conduct here was not merely overzealous law enforcement — it was a coordinated operation involving the lead AUSA, six agents from four agencies, and a 4.5-hour interrogation of an indicted, unrepresented defendant.

The presence of the AUSA strengthens the case for full suppression rather than partial suppression. The government may argue that only statements made after specific invocations should be suppressed. But AUSA Bateman's knowledge that Mr. Williams was indicted, her secret presence during the interrogation, and her failure to halt the interview despite witnessing constitutional violations demonstrate that the entire interview was infected by prosecutorial complicity. Under these circumstances, partial suppression — which would reward the government for stopping one violation while committing another — would be an inadequate remedy.

---

# V. REQUEST FOR EVIDENTIARY HEARING

Mr. Williams respectfully requests an evidentiary hearing on this motion. An evidentiary hearing is warranted where the defendant raises issues of material fact that cannot be resolved on the existing record. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000).

The following factual disputes require live testimony:

**First**, the pre-Miranda car conversation. The government has produced no recording, notes, or documentation of the conversation that occurred during Mr. Williams's transport from the point of arrest to the interview location. The content and scope of this conversation are material to the *Seibert* analysis and can only be established through testimony of the agents who were present.

**Second**, AUSA Bateman's presence and departure. The transcript confirms that Bateman was connected via speakerphone and went on mute at approximately Line 259. Whether she remained on the line for the duration of the interview, whether she heard subsequent attorney invocations, and whether she provided any guidance to the agents are factual questions that bear on the prosecutorial participation analysis.

**Third**, the agents' motive for concealing AUSA Bateman's identity. The transcript shows that agents referred to Bateman as "Meredith" and "the decision-maker" but never identified her to Mr. Williams as the AUSA handling his case. The agents' motive for this concealment is relevant to the deliberate elicitation analysis under *Massiah* and to the question-first analysis under *Seibert*.

**Fourth**, whether agents were aware of the sealed indictment. The *Massiah* violation requires proof that the government deliberately elicited statements from an indicted defendant. AUSA Bateman's knowledge of the indictment is established by the fact that she filed it. Whether the agents were also informed of the indictment's existence — and thus knew they were interrogating an indicted defendant — requires testimony.

*Page 23-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

**Fifth**, the completeness of the transcript. The transcript begins at 10:46 AM. Mr. Williams was arrested at approximately 9:30 AM. The events between arrest and the start of the recorded interview — approximately 76 minutes — are not documented in the record.

# VI. CONCLUSION

For the foregoing reasons, Defendant Fredrico Antoine Williams respectfully requests that this Court:

1. **Suppress all statements** made by Mr. Williams during the March 21, 2023 custodial interview, including all statements made during the pre-Miranda car conversation and the recorded interview from 10:46 AM to 2:03 PM;

2. **Suppress all derivative evidence** obtained as a result of the statements, including but not limited to any evidence identified, located, or obtained based on information Mr. Williams provided during the interrogation;

3. **Suppress all fruits** of the constitutional and statutory violations under the doctrine of *Wong Sun v. United States*, 371 U.S. 471 (1963);

4. **In the alternative**, if the Court does not find that the *Massiah* violation requires suppression of the entire interview, suppress all statements made after Mr. Williams's first unambiguous invocation of counsel at Line 2727 ("I would prefer to do that with my attorney") under *Edwards v. Arizona*;

5. **In the further alternative**, suppress all statements made after Mr. Williams's first invocation attempt at Line 124 ("I don't have an issue, but I would like to —"), which was interrupted by agents before completion;

6. **Grant an evidentiary hearing** on the factual issues identified in Section V; and

7. **Grant such other and further relief** as the Court deems just and proper.

DATED this 16th day of March, 2026.

WARREN & SUGARMAN

*/s/Ernest Warren, Jr., OSB No. #891384.*

Attorney for Defendant Fredrico Williams

WARREN & SUGARMAN
Attorneys at Law
838 SW First Avenue • Suite 200 • Portland, Oregon 97204
Tel (503) 228-6655
ernestwarrenlaw.com

## CERTIFICATE OF SERVICE

I Ernest Warren, Jr., hereby certify that, on March 16, 2026, I made service of **Defendant's Motion to Suppress Statements and Evidence, with Incorporated Memorandum of Law.** enclosed herein with the  Clerk of the U.S. District Court, District of Oregon in the attached matter upon the parties listed below by notice of electronic filing using the CM/ECF PACER Electronic Filing System as follows, and filed the original with the Court on the date listed below:

**AUSA Meredith Bateman**
United States Attorney's Office
1000 SW Third Avenue, Ste. 600
Portland, OR 97204
Ph: 503-727-1000
Email: Meredith.Bateman@usdoj.gov

DATED this 16th day of March, 2026.

WARREN & SUGARMAN

*/s/ Ernest Warren, Jr.,* OSB No. 891384
838 SW 1st Avenue, Suite 200
Portland, Oregon 97204
Telephone: (503) 228-6655
Email: e.warren@ernestwarrenlaw.com

Attorney for defendant Fredrico Williams

*Page 25-DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, WITH INCORPORATED MEMORANDUM OF LAW*